HUTCHINS, Appellant, vs. DA COSTA, Respondent.

*September 13 — October 2, 1894.*

*Vendor and purchaser of land: Cancellation of contract: Surrender of interest by act of parties: Bank check: Consideration.*

The parties to a contract for the purchase of land mutually agreed that the deal should be considered off, and the contract was accordingly surrendered to the purchaser, and the vendor agreed also to surrender to him a check given for a part of the purchase price and which had been sent away for collection, and that in the mean time payment thereof be stopped. Payment of the check was stopped accordingly, and it was subsequently returned to the vendor by the bank to which he had delivered it for collection and which had credited him with the amount thereof, upon his giving his own check to make good the account. Afterwards the vendor

delivered the check to an agent who had negotiated the contract for the sale of the land, but who paid no consideration for such delivery. *Held*, that there had been a valid surrender of the purchaser's interest in the land, and a cancellation of his check, and that the delivery of the latter to the agent did not make it an existing obligation.

APPEAL from the Circuit Court for *Douglas* County.

This action was commenced October 14, 1893, to recover the amount of a check of which the following is a copy, to wit:

"New York, October 28th, 1891.

" *National Bank of Commerce in New York,*

" Pay to Frank Ostrander, or order, twenty-five hundred dollars.

" $2,500.                    A. M. DA COSTA."

The defense alleged and relied upon is to the effect that October 27, 1891, the said *Da Costa* and the said Ostrander entered into a written contract, dated October 27, 1891, reciting, in effect, that Ostrander had received of *Da Costa* $2,500 (being the check in question), being earnest and partial payment for the real estate therein described, for which *Da Costa* therein agreed to pay, within sixteen days after hearing from mortgagee relative to release, $16,500; i. e. $2,500 upon delivery of this receipt, and $14,000 upon delivery of a good and sufficient warranty deed of conveyance, vesting good, clear, and unincumbered title in *Da Costa* or his order; that if *Da Costa* failed in any of the things to be done by him in completing this purchase, time being of the essence of this contract, said earnest payment to be forfeited to Ostrander and *Hutchins*, as a consideration paid for this agreement; but if Ostrander fail to transfer the above-described property, the purchaser having performed his part within the time above specified, then said earnest payment shall, upon presentation of this receipt, be returned to *Da Costa*, and this deal

shall be void. That said note and said agreement were deposited with the First National Bank of West Superior, with written instructions to the effect that said receipt be delivered to *Da Costa* and said check to Ostrander as soon as Ostrander informed the bank he had secured satisfaction of the mortgage on the property described in the receipt, and in case Ostrander failed to secure said satisfaction the $2,500 was to be refunded to *Da Costa* and the receipt returned to Ostrander,— such memoranda to be governed by the terms of the written contract; and indorsed thereon, signed by Ostrander, were these words: "Received the $2,500, and mortgagee will furnish satisfaction." That November 3, 1891, the said First National Bank delivered the check to Ostrander, who thereupon wrote his name upon the back, and the same was then deposited by Ostrander in the First National Bank to his credit. That the First National Bank thereupon sent the check to New York for collection, with this indorsement, under Ostrander's name, on the back: "Pay William J. Quinlan, Jr., cashier, or order, for collection, and credit account of the First National Bank, West Superior. W. H. SLACK, Cashier." That November 6, 1891, the said *Da Costa* and Ostrander met and mutually agreed that the deal should be declared off and canceled, and the papers returned to *Da Costa*. That the defendant, on the same day, telegraphed the New York bank, stopping payment of the check. That thereupon the words "Payment stopped" were written across the face of the check in red ink. That thereupon Ostrander informed the plaintiff that the deal was off. That November 12, 1891, the check, having been returned to the First National Bank of West Superior, was delivered by that bank to Ostrander, who gave his own check in lieu thereof. That about a month afterwards Ostrander delivered the check in suit to the plaintiff, without his paying any consideration therefor, and turned over to the plaintiff all the papers he had in the matter.

At the close of the trial, the court directed the jury to return a verdict in favor of the defendant, and they did so accordingly. From the judgment entered upon that verdict, in favor of the defendant, the plaintiff appeals.

*F. H. Remington*, for the appellant, to the point that there had been no legal rescission of the contract, cited *Richardson v. Johnsen*, 41 Wis. 100; *Telford v. Frost*, 76 id. 172–174; *O'Donnell v. Brand*, 85 id. 97–101.

For the respondent the cause was submitted on the brief of *Knowles, Dickinson, Buchanan, Graham & Wilson*.

CASSODAY, J. The foregoing statement contains the leading facts in the case. The land mentioned was the property of Ostrander. The plaintiff had no right, title, or interest in the land. He was the agent of Ostrander, and as such negotiated the contract of sale with the defendant. The plaintiff's contract or arrangement with Ostrander was such that he was to receive a commission on such sale; but he was in no sense the agent of the defendant, and had no contractual relation with him of any kind. He testified to the effect that he was not acting for the defendant in the transaction; that he never acted as his agent; that he was merely selling him the property; and that the defendant was not to pay him a commission. He does not seek to recover such commission, or for such commission, or for any commission or services in this action. The action is against the defendant as the maker of the $2,500 check, and is based upon that check and nothing else. The complaint alleges, in effect, that the defendant delivered the check to Ostrander, who thereupon became the owner and holder of it; that before the commencement of this action the check was indorsed by Ostrander and by him, for value, transferred and delivered to the plaintiff; and he demands judgment for the full amount of it.

The evidence is undisputed that November 3, 1891, Ostrander indorsed the check, merely to enable the First

National Bank of West Superior to collect the same from the New York bank upon which it was drawn; that the cashier of the First National Bank thereupon indorsed it for collection; that November 6, 1891, and before it was paid by the New York bank, the defendant and Ostrander mutually agreed that the deal should be considered off and that the contract signed by Ostrander and the defendant, and held by the First National Bank of West Superior, be surrendered to the defendant; that the same was on that day, and in the presence and at the request of Ostrander, surrendered to the defendant; that on the same day the defendant notified the New York bank not to pay the check, and it thereupon refused such payment, and the same was returned, indorsed as mentioned; that November 12, 1891, that check was delivered to Ostrander, upon his giving his own check for the same amount, to make good his account with the bank.

The question recurs whether Ostrander, after so receiving the check, had any legal claim against the defendant for the amount of it. As indicated, he had surrendered his contract with the defendant respecting the land six days before, and had agreed to surrender the check when it should be returned from New York. The statute expressly authorizes an "estate or interest in lands" to be "surrendered or declared," "by act or operation of law," as well as by deed or conveyance in writing. R. S. sec. 2302. The surrender to the defendant of the contract and written instructions, and the consent of Ostrander to the payment of the check being stopped by the defendant, and the taking up of the check from the bank by Ostrander, as mentioned, were acts which operated in law as a surrender and cancellation of all the interest which the defendant had acquired in the land, and also a surrender and cancellation of the check. This principle has been repeatedly considered and sanctioned by this court. *Telford v. Frost*, 76

Wis. 174, and cases there cited; *Kneeland v. Schmidt,* 78 Wis. 348; *O'Donnell v. Brand,* 85 Wis. 101. In fact, the contract itself provides for its cancellation in a certain event by a simple return of the papers. By such surren- der and cancellation the check became a mere nullity in the hands of Ostrander. The mere fact that, some thirty days afterwards, Ostrander delivered the check to the plaintiff, did not put life into it as an existing obligation, especially as it appears from the undisputed evidence that the plaintiff paid no consideration for such delivery.

*By the Court.*— The judgment of the circuit court is af- firmed.