TRUESDALE, Administrator, Respondent, vs. STRAIGHT, Appellant.

*April 9—May 6, 1924.*

*Landlord and tenant: Surrender of lease by operation of law: Estoppel in pais: Frauds, statute of: Use by son of mother's life estate: Rentals: Waiver by landlord.*

1. A finding by the court that a son had the use and enjoyment of his mother's life estate in a farm during six years preceding her death under an express contract to pay her $300 per year, is *held* not to be sustained by the evidence. p. 641.
2. The fact that the lessee son remained in possession of the premises without a written surrender of the lease does not authorize an inference by the court, under sec. 2302, Stats., that the lease was still in effect, where the lease was surrendered by act or operation of law, the statute not applying in such cases. p. 642.
3. Where the son, who had leased his mother's farm for a term of years at less than the premises were worth, surrendered the lease and put himself in a position to be denied further use of the premises at the end of any succeeding year, and also paid taxes on the premises which he was not required to pay under the original lease, and his mother made no further claim for rent thereunder, there was an estoppel *in pais* or a surrender by operation of law. p. 643.
4. The mother had the right to waive payments of rent thereunder as they became due. p. 643.

APPEAL from a judgment of the circuit court for Richland county: S. E. SMALLEY, Circuit Judge. *Modified and affirmed.*

An action by the administrator of the estate of Mary Straight to recover from the defendant, *B. F. Straight,* son of the deceased, certain moneys claimed to be due on a lease, and for the conversion of certain personal property of the deceased. The case was tried before the circuit court without a jury. The court found for the plaintiff and assessed the damages at $2,020. From the judgment entered thereon the defendant appealed.

Truesdale v. Straight, 183 Wis. 638.

For the appellant there was a brief by *Black & Clark* of Richland Center, and oral argument by *Russell A. Clark*.

For the respondent there was a brief by *Brindley & Brewer* of Richland Center, and oral argument by *E. E. Brindley*.

CROWNHART, J.  A. J. Straight, the husband of the deceased, died about 1872, leaving surviving him Mary Straight, his widow, and three sons, Ed. Straight, Victor Straight, and the defendant, *B. F. Straight*. His estate was settled in the county court, and the residue of his personal estate, valued at $754.25, was set over to the widow for herself and her children. He also left a farm of 300 acres in Richland county, of which 97½ acres around the homestead were set off to the widow as her homestead and dower interest in the land. In 1893 the defendant purchased the interest of his two brothers in all such real estate, and thereafter continued to live with his mother until 1913, at which time he was married and moved to another house on the same farm, about a quarter of a mile distant. The son Victor stayed at home from 1892 to 1904. The son Ed. was married and lived on the farm from 1903 to 1912, having rented the same from the defendant. In 1914 the brother Ed. claimed that the defendant should pay rent to the mother for the use of the 97½ acres, and as a result the defendant had a written lease drawn for the term of ten years, between him and his mother, which provided that his mother reserved the use of the house to live in; two acres for a garden, and one acre of her own choosing for potatoes. Defendant was to furnish meat for her use from hogs butchered on the farm, and also to furnish such milk and firewood as she should require, and in addition he was to pay her $300 per year as rent. Before this typewritten lease was signed the defendant had written in ink "that if either party does not live this contract becomes void." And further, that the

mother had the right to raise chickens as usual and free access to feed for them. Also, "I also agree to look after my mother and find her a woman to stay with her." The contract was signed without witnesses present. The defendant then gave his mother a draft on a bank for $300, which she placed in her trunk. The ensuing year the defendant farmed the tillable land, and after the expiration of the first year he testified that he had a further talk with his mother, and on account of the farm being rented on shares and times were rather hard she gave him back the certificate of deposit for the rent and he wrote on the contract, immediately over their signatures, the following clause, in her presence and by mutual agreement:

"Contract terminates after one year. No further rents required, also no further demands for rents, notes, or claims of any sort. By mutual consent of both parties."

He further said that his mother told him she did not need the money; that she wouldn't tax him any further rent; and that she never did ask him for any further rent after that time.

The mother continued to live on the farm, in a part of the house, and the defendant had tenants who lived in another part of it, and the wives of such tenants helped the mother with the washing and other household work, for which she paid them at times. Defendant went to see her daily and rendered her such assistance as she needed. He took good care of his mother. She raised chickens, and the defendant and tenants took the eggs to town and returned her the money or provisions as she might require. One witness testified that he had a talk with the mother some time before her death, when she said defendant gave half to the renters and after he paid the taxes and kept it up he didn't have much left. She said he didn't pay any rent and she didn't exact rent from him—didn't ask; that at one time he gave her $300, but she gave it back to him and told him to apply it on the taxes and upkeep of the farm. The mother had rented a

small piece of ground for a bee yard and defendant had collected $20 of this rent shortly before her death and kept it. The testimony of plaintiff's witnesses was to the effect that the rental value of the land for the six years preceding the mother's death was $10 per acre. Defendant's witnesses estimated it at $7 per acre. It further appeared that the defendant had paid taxes on the 97½ acres during the six years, amounting to $1,031.61.

The court made findings of fact to the effect that the defendant was under express agreement to pay his mother $300 per year for the use of her life estate in the 97½ acres; that he was indebted to her in the sum of $20 at the time of her death for money collected for her as rent of a bee yard; and that at the time of the death of the mother she was the owner of 200 chickens of the value of $200, which defendant converted to his own use, which sums the administrator was entitled to recover.

The defendant assigns as errors: the failure of the court to find that the deceased and the defendant agreed that no further rents were to be required at the end of the first year; the failure to find that the defendant rendered valuable services to the deceased which should be offset as a claim against the estate; and because the court failed to allow the counterclaim of the defendant for payment of taxes, amounting to $1,031.61.

The finding that the mother of the defendant had 200 chickens at her death which the defendant converted to his own use, and that they were of the value of $200, is supported by the evidence; likewise the finding that the defendant had collected $20 for rent of the bee yard which belonged to his mother and which he converted to his own use, is sustained by the evidence. The finding of the court that the defendant had the use and enjoyment of the mother's life estate during the six years preceding her death, under an express contract to pay his mother $300 per year, does not seem to be supported by the evidence. There was

an express contract drawn up for the year 1914, in which the defendant agreed to pay $300 a year to his mother. But it appears that at the end of the year this contract was revoked in writing by the mutual agreement of the parties. That is the testimony of the defendant and it is supported by admissions of the mother made to others before her death. It is also strongly supported by the fact that she did not collect rent during all this time from the defendant, and made no claims therefor. The defendant paid the taxes on the premises, which he would not be called upon to pay under the lease. The defendant continued to take care of his mother and to see to all her wants as he had done theretofore. The mother had expressed her appreciation of the fact that her son was looking after her interests, and had said that she did not know what she would do without his care. The use of the place was of considerable value to the defendant, but the mother had the undoubted right to give the defendant the free use and enjoyment of the place if she chose to do so. The evidence seemed to be undisputed that she did choose to give him the use of the place, he keeping the farm in condition, paying taxes, and generally looking after the care and comfort of the mother.

The trial court probably drew the inference that, because the defendant remained in possession of the premises, the lease was not revoked or surrendered in writing, as provided in sec. 2302, Stats., and that it remained in force and effect. But the statute does not apply in cases where there is a surrender by act or operation of law, and this court has repeatedly held that a lease may be surrendered by acts of the parties inconsistent with the terms of the lease.

"A surrender is the effectual yielding up of an estate or interest to one having the immediate reversion or remainder wherein such particular estate or interest may merge, and may be by such act or acts as are inconsistent with the continuance of such former estate or interest, and must be accepted and acted upon by the other, or by both parties. When such acts and acceptance so concur under such circumstances,

the party thus surrendering is estopped from subsequently disclaiming the effectiveness of such surrender." *O'Donnell v. Brand*, 85 Wis. 97, 101, 55 N. W. 154.

The lease was valuable to the defendant, for it gave him a ten-year use of the premises at $300 per year, which premises were worth $600 or more per year. In surrendering the lease he put himself in position to be denied the further use of the premises at the end of any succeeding year. For the same reason the surrender was valuable to the mother. Defendant paid taxes on the premises, which he was not required to pay under the old lease, and the mother made no further claim for rent under the lease. This worked an estoppel *in pais* or a surrender by "operation of law." *Hutchins v. Da Costa*, 88 Wis. 371, 60 N. W. 427.

But assuming the lease to have remained in force, the mother had a right to waive payments under it as they became due. This she did, according to her own admissions against interest.

*By the Court.*—The judgment is modified by deducting the sum of $1,800, and as so modified the judgment is affirmed. The appellant is to have costs on his appeal.