John WYSS, Plaintiff-Appellant,†

v.

Alfred ALBEE, Joseph Palen, Mathew Palen, Sr.,
Mathew Palen, Jr., Val Palen, and John Strohm
Estate, Robert J. Lager, Federal Land Bank, Trustee
for James E. Miles, James E. Miles, William McNulty,
Jr., Trustee for Robert J. Lager, and R. B. Milam,
Defendants-Respondents.

Court of Appeals

*No. 92–2572. Oral argument September 23, 1993.—Decided
March 24, 1994.*

(Also reported in 515 N.W.2d 517.)

†Petition to review filed.

245

For the plaintiff-appellant the cause was submitted on the briefs and oral argument of *John G. Barsness* of *Barsness Law Offices* of Madison.

For the defendants-respondents the cause was submitted on the brief and oral argument of *Bryant Klos* of *Klos, Flynn & Papenfuss - Chartered* of La Crosse.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. This is an appeal from a judgment dismissing John Wyss's claim for a deficiency or other money judgment against Alfred Albee and other Defendants. We have previously heard this case. In *Wyss v. Albee*, No. 89-1808, unpublished slip op. (Wis. Ct. App. Mar. 28, 1991), we reversed a summary judgment that dismissed Wyss's complaint. On remand, a trial was held, which resulted in this judgment. Wyss appeals.

Wyss sold his farm on land contract to Co-Jem Farms, a partnership. Co-Jem was a limited partnership, but because no limited partnership certificate was properly filed, Defendants were liable as general partners.

In our previous opinion, we concluded that Albee and the others were general partners under Iowa law, and because the Defendants had not established a *prima facie* defense, we reversed a summary judgment in their favor. *Id.* at 15-19. The issue in this second appeal is whether Co-Jem may be held liable for a deficiency in the first instance. The trial court concluded that a statute of frauds made the land contract ineffective as to Co-Jem. We agree, and therefore affirm.

The basis of the dispute in this case is Co-Jem's First Amended Agreement and First Amended Certificate of Limited Partnership. It provides in pertinent part:

## ARTICLE II.

## NAME AND BUSINESS OF THE PARTNERSHIP

. . . .

B. The purpose of the partnership shall be to purchase, sell, develop, and farm real estate located in the States of Minnesota or Iowa, and to buy and sell all property relating to such business and to enter into any and all contracts relating to the same.

## ARTICLE V.

## DUTIES, POWERS AND COMPENSATION OF PARTNERS

A. The general management, control and conduct of the business shall be solely vested in the General Partners, except that without the written consent or ratification of all Limited Partners, the General Partners shall have no authority to:

1. Do any act in contravention of this First Amended Agreement and First Amended Certificate of Limited Partnership . . . .

The real estate Wyss sold to Co-Jem is in Wisconsin. Co-Jem signed the land contract: "CO-JEM FARMS, an Iowa Partnership[,] By: Robert J. Lager, Jr., partner[, and] By: James E. Miles, partner." Wyss also signed the contract.

The trial court held that § 706.03(1), STATS., 1989-90,[1] rendered the land contract between Wyss and Co-Jem unenforceable. That statute provides:

---

[1] All references to § 706.03(1), STATS., are to the 1989-90 edition of the Wisconsin Statutes. The statute has been renumbered as § 706.03(1m), effective April 28, 1992.

A conveyance signed by one purporting to act as agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of proving the authority of any such agent shall be upon the person asserting the same.

The trial court found that Lager and Miles were not expressly authorized to purchase Wisconsin land for Co-Jem, and that there was no written ratification of their acts.

## MARTH V. EDWARDS

Wyss argues that § 178.06(1), STATS., applies to this case, not § 706.03, STATS. Section 178.06(1) provides:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

In *Marth v. Edwards,* 159 Wis. 2d 773, 465 N.W.2d 248 (Ct. App. 1990), William and Violet Edwards sued Greenbriar Partnership and Doerr, one of Greenbriar's partners, for breach of a real estate purchase agreement. They asserted that Swoboda, another Greenbriar partner who had signed the agreement to buy real estate from them, was Greenbriar's agent.

They claimed that Swoboda had the apparent authority to bind Greenbriar and Doerr, making the partnership and Doerr liable for damages resulting from breach of the agreement.

*Marth* considered the conflict between §§ 178.06(1) and 706.03(1), STATS. We concluded that § 706.03(1) takes precedence over § 178.06(1). We said:

> Chapter 178, Stats., is not a vehicle of protection for those involved in real estate transactions with partnerships. The vehicle of protection is rather the statute of frauds. Had the Edwardses followed that statute, they would not be in the position they are today. We conclude that the very simple and expedient way to protect those dealing in real estate transactions involving partnerships is the statute of frauds. That, not "apparent authority" under ch. 178, is the remedy provided by the legislature.

*Marth,* 159 Wis. 2d at 781-82, 465 N.W.2d at 251-52.

The facts in *Marth* are quite similar to the facts here. Though Co-Jem is not a defendant here, Wyss correctly argues that his "contractual claim is against the Co-Jem partnership, not the respondents." We also agree with Wyss's assertion that: "Any recovery by John Wyss on his claim must, therefore, be as a result of whatever enforceable contract John Wyss has with the Co-Jem partnership. It is not through any direct relationship with the respondents." Therefore, in both *Marth* and here, the critical inquiry is into the agent's ability to bind the partnership. If Co-Jem is bound, our previous decision in *Wyss v. Albee* necessarily binds Albee and the other partners named in this case. But without Co-Jem's liability, its partners cannot be liable either.

Wyss first asserts that the facts in *Marth* are different from this case. He suggests that *Marth* does not control because, unlike the land contract in this case, the conveyances in *Marth* did not identify a partnership. He points out other differences, such as the fact that his land contract had "all of the earmarks of a fully negotiated" deal and had been "substantially, if not completely performed" until the time of default. Wyss asserts that had he "been dealing with a single individual, had the conveyance been signed only by that individual with no mention of a partnership, had the transaction been vague and incomplete, and had there been no contract performance, then *Marth* might control the present case."

What Wyss is really asking is that we limit *Marth* to its facts. Our quotation from *Marth* shows that we intended the opposite. We spoke of the statute of frauds as providing protection to noncontracting partners. Our warning to the vendor in *Marth* might as well have been given to Wyss—had he demanded that Co Jem follow § 706.03(1), STATS., he would have been protected. As one commentator noted:

> An agency power to convey may now be given by express oral authorization if the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. Section 706.03(1). *Inasmuch as the burden of proving the authority of any such agent is upon the person asserting the same (section 706.03(1)), counsel for the careful grantee normally would insist upon written authorization.*

Allen N. Rieselbach, *Drafting Conveyances Under Chapter 706,* GAVEL (Milwaukee Bar Ass'n, Milwaukee, Wis.), Dec. 1971, at 7, 8 (emphasis added).

■ We conclude that this warning is as applicable to grantors as it is to grantees. Both may want to enforce their rights under conveyances.

■ Wyss next asks us to overrule *Marth* because it was wrongly decided. *Marth* is a very recent case, and there is nothing about its reasoning that convinces us that it was wrongly decided. We agree that *Marth* could have been decided differently, but there is considerable judicial reluctance to depart from the rule of *stare decisis*. Though *Planned Parenthood v. Casey*, 505 U.S. —, 112 S. Ct. 2791, 2808-2816 (1992), considers matters not present in court of appeals cases, that case clearly explains that *stare decisis* is a substantial disincentive to change. We conclude that we will not overrule *Marth*.

Like Wyss, the dissent contends that *Marth* is factually distinguishable from the case before us. But rather than limit *Marth* to its facts or overrule it, the dissent argues that we should follow *Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135 (2d Cir. 1989). In *Cinema North*, a proposal for a fifteen-year lease was signed on behalf of the partnership, Plaza, by an individual identified as Plaza's vice-president. Plaza argued that because the vice-president was not authorized in writing to execute a lease as Plaza's agent, enforcement of the lease was barred by the New York statute of frauds, N.Y. GEN. OBLIG. LAW § 5-703(2) (McKinney 1989), which provides:

> A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party

253

to be charged, or by his lawful agent thereunto authorized by writing.

The court noted that under case law interpreting § 5-703(2), written authorization was not required for an agreement signed by an officer of a corporation to be binding on the corporation. *Cinema North*, 867 F.2d at 140 (citing *Flax v. B.M. Dev. Corp.*, 313 N.Y.S.2d 591, 592 (N.Y. App. Div. 1970)). The court explained that the reason for this exception is that a corporation cannot act for itself, and, therefore, the acts of corporate officers on behalf of the corporation are deemed to be the acts of the corporation itself. *Id.* Thus, an agreement signed by a corporate officer would be "subscribed by the party to be charged" for purposes of § 5-703(2). *Id* . The court then determined that the exception to the requirement for written authority should be extended to partners and "officers" of partnerships when the partners or officers are acting within the scope of the partnership's usual business. *Id.* at 141.

We decline to follow *Cinema North* for several reasons. First, the Wisconsin statute of frauds differs significantly from the statute examined in *Cinema North*. The New York statute applies to both partnerships and corporations while the Wisconsin statute has separate provisions governing conveyances by partnerships and corporations. Section 706.03(1), STATS., requires that the partner-agent be expressly authorized and the partnership-principal be identified as such in the conveyance in order to hold the partnership and the other partners liable. With respect to corporate conveyances, § 706.03 states in relevant part:

> (2) Unless a different authorization is recorded under sub. (3) or is contained in the corporation's articles of incorporation, any one officer of a

private corporation is authorized to sign conveyances in the corporate name . . . .

(3) Any private corporation may, by resolution of its governing board, duly adopted, certified and recorded in the office of the register of deeds of the county in which a conveyance executed by such corporation is to be recorded, authorize by name or title one or more persons, whether or not officers of such corporation, to execute conveyances, either generally or with specified limitation, in the name and on behalf of such corporation. After adoption and recording of such resolution and until recording of a resolution amending or revoking the same, conveyances may be executed on behalf of such corporation only in accordance with the terms thereof.

These provisions indicate that in Wisconsin, a conveyance will not be treated as being subscribed by, or binding upon, a corporation simply because it contains the signature of one of the corporation's officers. Based on the separate provisions for partnerships and corporations in Wisconsin's statute of frauds, and the fact that neither resembles the New York statute of frauds, we see no reason to adopt the analogy between corporate officers and partners drawn by the Second Circuit.

Second, the proposition that the partners in a partnership *are* the partnership is a major departure from established law in Wisconsin. For instance, in *Schroeder v. Raich*, 89 Wis. 2d 588, 595, 278 N.W.2d 871, 874 (1979), the court noted: "[E]ach partner is the agent of his or her copartners for the purpose of the partnership business." Under Wisconsin's version of the Uniform Partnership Act, "The law of agency shall apply under this chapter." Section 178.02(3), STATS. Partnership law depends upon agency to bind other partners, and agency is the focus of § 706.03(1), STATS. The Second

255

Circuit and the dissent's assumption that a corporation's officers *are* the corporation and, therefore, a partnership's partners *are* the partnership is something foreign to Wisconsin law.[2]

Finally, we do not view § 706.03(1), STATS., as an impediment. The statute protects unidentified partners against the unauthorized acts of another partner. As we stated in *Marth*: "We conclude that the very simple and expedient way to protect those dealing in real estate transactions involving partnerships is the statute of frauds. That, not 'apparent authority' under ch. 178, is the remedy provided by the legislature." *Marth*, 159 Wis. 2d at 781-82, 465 N.W.2d at 252.

## SECTION 706.01(2)(a), STATS.

Wyss contends that all of ch. 706, STATS., and in particular, 706.03(1), STATS., is inapplicable to this land contract with Co-Jem because the land contract was partially performed. We agree that since Co-Jem took possession of the real estate, made payments on the contract, and even sold the real estate after several years, the contract was partially performed. But we do not agree with Wyss's interpretation of § 706.01(2), STATS.

---

[2] Because we do not accept the premise that partners *are* the partnership for purposes of the statute of frauds, we also reject the contention that Lager and Miles were not "purporting to act as agent[s]" for Co-Jem, the purported principal. Using the dissent's definition of "purport"—to convey, imply or profess outwardly—we fail to see how we could draw any conclusion other than Lager and Miles purported to act as Co-Jem's agents when signing the land contract: "CO-JEM FARMS, an Iowa partnership[,] By: Robert J. Lager, Jr., partner[, and] By: James E. Miles, partner."

Section 706.01(2), STATS., states in relevant part: "Excluded from the operation of this chapter are transactions which an interest in land is affected: (a) By act or operation of law . . . ." Wyss asserts that the doctrine of part performance is an "operation of law" which makes ch. 706, STATS., inapplicable to his land contract with Co-Jem. He uses the definition of "operation of law" found in BLACK'S LAW DICTIONARY 985 (5th ed. 1979): "This term expresses the manner in which rights, and sometimes liabilities, devolve upon a person by the mere application to the particular transaction of the established rules of law, without the act or co-operation of the party himself."

The doctrine of part performance allows a court in equity to enforce a contract that does not comply with a statute of frauds if the plaintiff has rendered partial performance of the contract. A party may, by his or her conduct, be estopped from asserting the statute of frauds. *Bunbury v. Krauss*, 41 Wis. 2d 522, 532, 164 N.W.2d 473, 477 (1969). But that does not mean that part performance is an "operation of law" and, therefore, excluded from the statute of frauds. What Wyss is asserting is a commingling of the doctrine of part performance, a definition of "operation of law," and the holdings of several cases which discuss the meaning of "by act or operation of law," now found in § 706.01(2)(a), STATS. But this commingling does not lead to the result Wyss suggests.

The phrase, "by act or operation of law," now found in § 706.01(2)(a), STATS., was previously found in § 240.06, STATS., 1969, prior to the creation of ch. 706, STATS., by the Laws of 1969, ch. 285, § 23, effective July 1, 1971. Section 240.06 provided in part:

257

No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing, subscribed by . . . .

Wyss cites *Telford v. Frost*, 76 Wis. 172, 44 N.W. 835 (1890), *O'Donnell v. Brand*, 85 Wis. 97, 55 N.W. 154 (1893), *Hutchins v. Da Costa*, 88 Wis. 371, 60 N.W. 427 (1894), *Maxon v. Gates*, 112 Wis. 196, 88 N.W. 54 (1901), and *Niesen v. Erickson*, 106 F.2d 937 (7th Cir. 1939), for their definitions of "act or operation of law," which he equates with the doctrine of part performance. But these are "surrender" cases under a predecessor to § 240.06, STATS., REV. STATS., 1878, ch. 104, § 2302. Typical of this kind of case is *Wyman v. Utech*, 256 Wis. 234, 40 N.W.2d 378 (1949), *on rehearing*, 256 Wis. 241a, 42 N.W.2d 603 (1950).

In *Wyman*, Claude and Myrtle Wyman obtained an option to purchase land from Ida Utech. Claude and Ida later changed some of the terms of the option, and each signed the option as changed. Myrtle then attempted to enforce the option as originally given. On rehearing, the court cited *Telford* for the proposition that a surrender "by act or operation of law" must be inconsistent with the continuance of a former interest in land, and must be accepted and acted upon by all parties concerned. The court concluded that Myrtle was entitled to specific performance because she did nothing that amounted to a surrender by act or operation of law, as that term was used in § 240.06, STATS. *Wyman*, 256 Wis. at 241b, 42 N.W.2d at 604.

The changes in Wisconsin conveyancing law which became ch. 706, STATS., and other chapters, were

intended to revise and simplify the law relating to remedies in the field of real property. 1967 Senate Joint Resolution 49. The *Gavel* article previously quoted notes that: "Rather than disturb sufficient and familiar law and practices, [a committee of the State Bar] recommended changes which resulted only in simplification of procedures, resolution of conflicts and clarification of statutes and cases." Rieselbach, *Drafting Conveyances Under Chapter 706*, at 7. An outline for a State Bar of Wisconsin training seminar noted that in § 706.01(2), STATS.:

> The exceptions to the general rule found in (2) have been taken from various previous sections of the code, and are intended as a comprehensive list of the transactions excluded from the operation of this chapter.
>
> > (A) Excludes transactions "by act or operation of law" and is taken from the old 240.06 and 240.07.
>
> ....
> These exceptions do not change the existing law, but they do narrow the number of exceptions to be in conformity with the present language of the statutes of frauds.

STATE BAR OF WISCONSIN, NEW LAWS ON INTERESTS IN PROPERTY, CONVEYANCING, LANDLORD & TENANT, AND TRUSTS UNDER THE 1969 LEGISLATIVE REVISIONS OF CHAPTERS 334, 285, 284 & 283, at 58-59 (1971).

We conclude that the law concerning the meaning of the phrase, "by act or operation of law," was codified in § 706.01(2)(a), STATS. But the law upon which Wyss relies is a series of cases which consider when an owner of an interest in real estate *surrenders* that interest

other than by deed or other conveyance. This law is of no assistance to Wyss because no surrender is involved in this case. We are also unwilling to accept Wyss's thesis because it would create a situation where the doctrine of part performance would be applicable to two sections of the statutes—§ 706.01(2)(a) where it is excluded from the operation of ch. 706, STATS., and § 706.04, STATS., where it forms the basis for equitable relief from the statute of frauds. *See* STATE BAR OF WISCONSIN, NEW LAWS, at 62 (§ 706.04 "[c]larifies and restates 'doctrine of part performance' by identifying its elements"). The doctrine of part performance is a form of equitable relief from the statute of frauds. Certainly it cannot simultaneously be a part of ch. 706 and excluded from that chapter. The doctrine of part performance does not make § 706.03(1), STATS., inapplicable to this case.

## MATERIALITY OF BREACH

Wyss asserts that Co-Jem's purchase of Wisconsin farmland in violation of Co-Jem's partnership agreement and certificate was not a material breach of those documents. But he cites no authority for this assertion. We have said that an argument without legal authority specifically supporting the relevant proposition is inadequate, and that in the future, we will refuse to consider such an argument. *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 377-78 (Ct. App. 1980). We follow *Shaffer* and decline to develop Wyss's argument for him.

## RATIFICATION

Wyss next contends that even if the acts of Lager and Miles were unauthorized, Albee and the other

partners knew of Co-Jem's purchase of the Wisconsin farm shortly afterward and did not repudiate the purchase. Wyss contends that this constitutes ratification of the transaction. He argues: "At that point in time, as principals, they were obligated to repudiate Lager and Miles' actions if they in fact disapproved of their acts." This statement points out the difficulty with Wyss's argument. It is true that at the time, Albee and the others *were* principals. But it is also true that they did not know that they were principals. They believed they were limited partners. The actions required of one who believes that only his or her investment is at risk are very different from the actions required of one who is a general partner in a venture. Mathew Palen, Jr., one of the Defendants, testified that when he read of Co-Jem's purchase of the Wisconsin farm, he was unhappy about it. He saw an attorney who did not think Palen, as a limited partner, could do anything about the purchase. Palen concluded that there was not a lot that he could say or do. The money had been spent.

Wyss does not suggest what Albee and the others should have done upon discovering that Lager and Miles had purchased the Wisconsin farm, other than to repudiate their actions. But had Albee or Palen said to Lager or Miles, "I repudiate your action," nothing would have changed. The farm was already purchased, and the stage set for the disaster that followed. Section 179.23(1), STATS., provides in part that a limited partner who participates in the control of the business assumes liability not shared by a limited partner who does not do so. Under Wyss's theory, the limited partners were doomed to liability no matter what they did. If they did nothing, they ratified the unauthorized act.

If they did something, § 179.23(1) made them liable to Wyss.

In *Shearer v. Dunn County Farmers Mut. Ins. Co.*, 39 Wis. 2d 240, 247, 159 N.W.2d 89, 93 (1968), the court held that: "[T]o base ratification on mere silence and failure to repudiate, the purported principal must have had full knowledge of all material facts relating to the act of the person who assumed to act as agent." The crucial fact was that Albee and the others did not know they were general partners. Without their knowledge of that fact, the best that can be said for their silence is that it confirms their then-assumption that they were limited partners and unable to change a *fait accompli*. Albee and the others did not ratify the purchase of the Wisconsin real estate.[3]

---

[3] Wyss contends that Albee and the others failed to return some minimal partnership distributions when they discovered that they were general partners, and that this constitutes a ratification. The RESTATEMENT (SECOND) OF AGENCY § 99 cmt. c (1957) provides that if the situation of the principal is so changed that it is inequitable to require a return of a benefit under the changed circumstances, the retention of the benefit does not constitute an affirmance. The trial court noted that over five years had passed between the purchase of the Wisconsin real estate and the commencement of this lawsuit, that the parties' positions had changed, and that the distributions were limited. The court concluded that equity did not require the return of the distributions. We review an equitable remedy for an erroneous exercise of discretion. *Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223, 228 (Ct. App. 1984). The trial court based its decision on relevant facts, and its decision is rational. It did not erroneously exercise its discretion by refusing to require a return of the minimal distributions.

Wyss asserts that the Iowa, rather than the Wisconsin, statute of frauds should apply to determine the validity of the land contract. We need not consider whether the two jurisdictions' laws differ because we agree with the analysis of this choice-of-law issue in *Triple Interest, Inc. v. Motel 6, Inc.*, 414 F. Supp. 589, 593 (W.D. Wis. 1976). In *Triple Interest,* the court was faced with a possible conflict between § 706.03(1), STATS., and a comparable California statute. The court used the choice-of-law considerations found in *Hunker v. Royal Indem. Co.*, 57 Wis. 2d 588, 598-99, 204 N.W.2d 897, 902 (1973), which are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. The court found that because of a widespread recognition of a state's special interest in its own land, applying Wisconsin law would further the future predictability of results. Moreover, application of Wisconsin law to a case where one of the parties was a Wisconsin resident and the case involved Wisconsin land was not unreasonable because Wisconsin had a substantial interest in protecting its citizens and landowners from fraud and misrepresentation in the conveyance of land. Further, the judicial task was simplified by Wisconsin's rule which required express disclosure of an agency relationship. Finally, the court concluded that the Wisconsin rule was better than a rule which does not require express disclosure of an agency relationship.

We analyze the choice of law between § 706.03(1), STATS., and an Iowa statute, which Wyss asserts does

not offer the protection of § 706.03(1), as the court examined the same statute and the same contention in *Triple Interest.* The only difference between this case and *Triple Interest* is that in that case, a California statute, rather than an Iowa statute, was considered. The difference is insignificant. We conclude that § 706.03(1) offers greater protection to Wisconsin residents and is the better choice of law.

## EQUITY INTERVENTION

Wyss argues that it is unfair that he, and not Albee and the Co-Jem partners, is suffering as a result of this lawsuit. He contends that he has lost his "nest egg," while Albee and the rest are better off than he. In part, this mischaracterizes the condition of some of the persons who thought they were limited partners in a venture that might earn a good return on their money. In any event, this contention is irrelevant.

Wyss contends that *Kipp v. Laun,* 146 Wis. 591, 131 N.W. 418 (1911), supports a holding that all of the facts in this case must be considered, and not just that selected portion which enables a technical use of the statute of frauds in an immaterial "authority" issue. The *Kipp* court held that a parol agreement was taken out of the statute of frauds by part performance. While the defendant's conduct in *Kipp* was not consistent with proper business ethics, the court's conclusion was based on law. It was not a conclusion that the party whose business ethics were found to be superior should prevail.

We acknowledge that Wyss is in a difficult financial position not of his own making. But, as the court noted in *Triple Interest,* 414 F. Supp. at 595, § 706.03(1), STATS., is a beneficial statute that protects persons who deal with partnerships from abuse and

protracted litigation. As the history of this case shows, there are some who are not benefited by that statute, but the Legislature has made the determination that the benefits of the statute outweigh its costs. We are an error-correcting court. *State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 93-94, 394 N.W.2d 732, 735 (1986) (per curiam). In this case, as in most cases, we can only determine whether there is error to correct by examining statutes, case law and other authority. Whether, as a matter of policy, one rule is better than another is a matter within the function of the supreme court or the Legislature.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). Section 706.03(1), Stats., 1989-90, does not apply to the land contract between John Wyss and Co-Jem Farms because the contract was executed by the partnership and not by "one purporting to act as agent" for the partnership. I therefore dissent and would enforce the contract.

Section 706.03(1), Stats., provides:

> A conveyance signed by *one purporting to act as agent* for another shall be ineffective as against the *purported principal* unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of proving the authority of any such agent shall be upon the person asserting the same. [Emphasis added.]

The statute applies only when one "purports" to act as the agent for another. "Purport" means "to convey, imply, *or profess outwardly* (as meaning, intention, *or true character* . . . .)" (Emphasis added.) WEBSTER'S

THIRD NEW INTERNATIONAL DICTIONARY 1847 (1976). Here, the land contract was executed: "CO-JEM FARMS, an Iowa partnership," "BY: Robert J. Lager, Jr., partner," and "BY: James E. Miles, partner." This is how a partnership necessarily does business. *See* § 178.06(1), STATS.[1]

The same issue involved here arose in *Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135 (2d Cir. 1989).[2] The "vice-president" of Plaza, a partnership, executed a lease subject to the New York statute of frauds. That statute provided that "an agreement for the sale or lease of land is not binding unless 'in writing subscribed by the party to be charged, or by his lawful agent thereunto authorized in writing.' " *Id.* at 140 (quoting N.Y. GEN. OBLIG. LAW § 5-703(2) (McKinney 1978)).

The New York court analogized to the law governing corporations: a corporate officer is not an "agent" within the meaning of the statute of frauds, and written authorization is not required for an agreement signed by an officer to be binding on the corporation. *Id.* The reason for this is that, because a

---

[1] Section 178.06(1), STATS., provides:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

[2] *Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135 (2d Cir. 1989) "broke new ground in partnership law." William D. Harrington, *Business Associations*, 41 SYRACUSE L. REV. 15, 34 (1990). The author describes Judge Pratt's opinion on this issue of first impression as "thoughtful." *Id.* at 34-35.

corporation cannot act for itself, the acts of corporate officers are deemed to be the acts of the corporation itself. *Id*. The court held that this reasoning applied equally to partners who are generally authorized to do the business of the partnership. *Id*. at 141. New York's partnership law provides: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner . . . binds the partnership . . . ." *Id*. at 140-41. Wisconsin's partnership law is identical to New York's in this respect, and to the Uniform Partnership Act.[3] Additionally, § 178.06(1), STATS., provides that "the act of every partner, *including the execution in the partnership name of any instrument* . . . binds the partnership . . . ." (Emphasis added.) Here, the land contract was executed in the partnership name; that execution by the two partners bound the partnership.

"Agent" as used in § 706.03(1), STATS., has a meaning different from "agent" as used in § 178.06(1), STATS. In § 706.03, it describes the situation where a person executing a conveyance represents to the other contracting parties that he or she is acting on another's behalf and does not intend to be bound individually. The purpose of the statute is to put the other contracting parties on notice that the "purported agent" intends to bind a "purported principal." The statute

---

[3] The majority fails to appreciate that this provision embodies not only the concept of agency but direct authority. *See Fedders Fin. Corp. v. Borg Warner Acceptance Corp.*, 438 F. Supp. 1143, 1153-54 (S.D. Miss. 1977) (ordinary rules of agency govern partner's acts; partner also has power to bind partnership as to matters within scope of partnership business), *rev'd on other grounds, Borg-Warner Acceptance Corp. v. Fedders Fin. Corp.*, 614 F.2d 399 (5th Cir. 1980).

warns such parties that they proceed at their own risk if they rely upon the agent's purported authority.[4]

Here, it is clear from the manner of execution of the land contract that the principal—Co-Jem Farms—intended to be bound. The persons executing the contract did not purport "to act as agent" for a "purported principal"; *they were the principal.*[5] *Marth v. Edwards*, 159 Wis. 2d 773, 465 N.W.2d 248 (Ct. App. 1990) does not apply because, unlike here, in that case the contract to purchase real estate was signed by an individual and contained no mention of the partnership or of the alleged agent's status as a partner.

Section 706.03(1), STATS., as construed by the majority, deletes from the statute the phrase "purport-

---

[4] In the absence of facts indicating that a partner is acting beyond his or her real or apparent authority, a third party is not required to search for some limitation on the partner's authority. *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1116 (2d Cir. 1986).

[5] The effect of the majority's decision is to adopt the "aggregate" rather than the "entity" approach to partnerships, even when applied to the holding and conveyancing of property. Bromberg and Ribstein state that the courts are divided as to whether the Uniform Partnership Act, ch. 178, STATS., adopted the aggregate or entity approach. 1 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 1.03, at 1:22 (1994). They suggest, however, that "[a]n examination of the U.P.A. reveals a definite preponderance of entity-based over aggregate features." *Id.* As to partnership property they conclude that strong considerations of convenience and efficiency suggest that the partnership shall be treated as an entity. *Id.* at 1:24. "The holding and conveyance of property in the name of the partnership makes it unnecessary for the partners to join individually in every conveyance." *Id.*

ing to act as agent." This construction fails to give effect
to all the language of the statute.