John WYSS, Plaintiff-Appellant-Petitioner,

v.

Eva J. ALBEE, as Personal Representative for the
Estate of Albert Albee, Joseph Palen, Steven R. Palen
as Special Administrator for the Estate of Mathew
Palen, Sr., Mathew Palen, Jr., Val Palen, and John
Strohm Estate, Robert J. Lager, Federal Land Bank,
Trustee for James E. Miles, James E. Miles, William
McNulty, Jr., Trustee for Robert J. Lager, and R. B.
Miliam, Defendants-Respondents.

Supreme Court

*No. 92–2572. Oral argument February 21, 1995.—Decided
May 31, 1995.*

(Also reported in 532 N.W.2d 444.)

101

104

For the plaintiff-appellant-petitioner there were briefs by *John G. Barsness, Paul A. Dirkse* and *Barsness Law Offices,* Madison and oral argument by *John G. Barsness.*

For the defendants-respondents there was a brief by *Bryant Klos* and *Klos, Flynn & Papenfuss, Chartered,* LaCrosse and oral argument by *Bryant Klos.*

DAY, J. This is a review of a decision of the court of appeals[1] affirming a judgment of the circuit court for La Crosse County, Honorable Dennis G. Montabon, Judge, that held that the statute of frauds provision in

[1] *Wyss v. Albee,* 183 Wis. 2d 245, 515 N.W.2d 517 (Ct. App. 1994).

sec. 706.03(1), Stats. 1979–80,[2] precluded enforcement of a land contract between Mr. John Wyss and "CO-JEM FARMS, an Iowa Partnership" (Co-Jem Farms) because the persons who signed the contract in the name of the partnership did not have express authority to make the purchase. The issue on review is whether the statute of frauds provision of sec. 706.03, Stats., or the apparent authority provision of the Uniform Partnership Act, sec. 178.06(1), Stats., controls. We conclude that if the express provisions of sec. 178.06(1), were satisfied, the transaction was controlled by that statute.

Co-Jem Farms was organized as an Iowa limited partnership. There were two general partners: James E. Miles and Robert J. Lager, and nine limited partners, including Respondents Alfred Albee, Joseph Palen, Mathew Palen, Sr., Mathew Palen, Jr., and Val Palen. On December 1, 1978, the partners executed a Limited Partnership Certificate. The Certificate was never recorded.

On about January 3, 1980 the partners executed a First Amended Agreement and First Amended Certificate of Limited Partnership. The Amended Agreement and Amended Certificate stated in relevant part as follows:

> the parties hereto agree that the Limited Partnership Certificate dated as of December 1, 1978 is amended to read in its entirety as follows:
>
> ARTICLE II. NAME AND BUSINESS OF THE PARTNERSHIP . . . B. The purpose of the partnership shall be to purchase, sell, develop and farm real

---

[2] All references to sec. 706.03(1), Stats., are to the 1979–80 edition of the Wisconsin Statutes. The statute has been renumbered as sec. 706.03(1m), effective April 28, 1992.

estate located in the States of Minnesota or Iowa, and to buy and sell all property relating to such business and to enter into any and all contracts relating to the same.

ARTICLE V. DUTIES, POWERS AND COMPENSATION OF PARTNERS A. The general management, control and conduct of the business shall be solely vested in the General Partners, except that without the written consent or ratification of all Limited Partners, the General Partners shall have no authority to:

> 1. Do any act in contravention of this First Amended Agreement and First Amended Certificate of Limited Partnership; . . .

The Amended Agreement and Amended Certificate were never recorded.

On or about March 2, 1981, Wyss entered into a land contract as vendor with Co-Jem Farms as vendee. The document was signed:

> Co-Jem Farms, an Iowa Partnership, by Robert J. Lager, Jr., partner, and by James E. Miles, partner.

Under the contract, Co-Jem Farms agreed to pay monies described therein to Wyss in exchange for title to real estate in Jackson County, Wisconsin. Because the land was in Wisconsin, according to the terms of the Amended Agreement and Amended Certificate the general partners did not have express authority to buy the land. Co-Jem Farms sold its interest in the above-described real estate to defendant R.B. Miliam by land contract dated December 31, 1982. Payments to Wyss on the underlying Wyss/Co-Jem Farms land contract continued until Co-Jem Farms' default in 1985. Wyss declared the entire contract due and payable and filed this suit in La Crosse County on July 28, 1986 seeking

a sheriff's sale and deficiency judgment if the sale price did not satisfy the balance due under the contract.

Respondents, Albee, et al, moved for partial summary judgment based on their status as limited partners, and the circuit court granted partial summary judgment. Wyss appealed, and the court of appeals reversed and remanded the case. During this first appeal, the court of appeals determined that Iowa limited partnership law applies. *Wyss v. Albee,* No. 89–1808, unpublished slip op at 13 (Ct. App. March 28, 1991). Under that law, the failure to record the limited partnership made the limited partners potentially liable for the land contract as general partners if "Wyss's attorney in fact believed that the six defendants were general partners." *Id.* at 15. Wyss settled and dismissed all claims against one of the six defendants, John Strohm Estate. On remand, after a trial to the court, the circuit court found that Wyss's attorney in fact believed Co-Jem to be a general partnership and "did believe Alfred Albee, Mathew Palen, Sr., Mathew Palen, Jr., Joseph Palen and Val Palen were general partners in Co-Jem Farms." Respondents do not challenge these legal conclusions or factual findings.

However, although the circuit court stated that Respondents were "not relieved from liability to John Wyss by reason of their partnership status," it held that Respondents were not liable to Wyss because the statute of frauds provision in sec. 706.03(1), Stats.,[3] precluded enforcement of the land contract. A divided

---

[3] The court of appeals determined that the relevant statute of frauds provision in this case was the Wisconsin statute instead of the Iowa statute. *Wyss v. Albee,* 183 Wis. 2d at 264. For the reasons cited by the court of appeals, we agree that the relevant statute of frauds provision is the Wisconsin statute of frauds. Both parties agree that the Wisconsin Uniform Partner-

court of appeals affirmed. Wyss petitioned this court for review, which was granted August 26, 1994.

■

The question of whether the statute of frauds provision of sec. 706.03, Stats., or the apparent authority provision of the Uniform Partnership Act, sec. 178.06(1), Stats., controls is a question of law. This court must decide questions of law independently without deference to the decisions of the circuit court and court of appeals. *Ball v. Dist. No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

■

Section 178.06(1), Stats. 1993–94, provides:

**178.06 Partners are agents of partnership. (1)** Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which the partner is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom the partner is dealing has knowledge of the fact that the partner has no such authority.

Section 706.03, Stats. 1979–80, provided:

**706.03 Agents, officers and guardians. (1)** A conveyance signed by one purporting to act as agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. The burden of

ship Act, as opposed to any similar Iowa statute, is the relevant countervailing provision.

109

proving the authority of any such agent shall be upon the person asserting the same.

Both of these statutes are unambiguous on their face. However, the interaction of two statutes can create an ambiguity. *Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 201, 496 N.W.2d 57 (1993). Here, when the two statutes are read together an ambiguity appears in the form of an apparent conflict.

■ That apparent conflict may be summarized as follows: while sec. 178.06(1), Stats., states that a partner is an agent of the partnership and that a partner with apparent authority acting in the partnership name may bind the partnership by the execution of "any instrument," sec. 706.03, Stats., states that an agent needs express authority to bind his principal if the conveyance he executes involves an interest in real estate. We conclude that if the express provisions of sec. 178.06(1), Stats., were satisfied, the transaction in question was controlled by that section.

■ It is a cardinal rule of statutory construction that conflicts between statutes are not favored and will be held not to exist if the statutes may otherwise be reasonably construed. *Mack v. Jt. School Dist. No. 3,* 92 Wis. 2d 476, 489, 285 N.W.2d 604 (1979); *Salzman v. DNR,* 168 Wis. 2d 523, 530, 484 N.W.2d 337 (Ct. App. 1992). Here, conflict may be avoided if the statute of frauds provision of sec. 706.03, Stats., is interpreted as being applicable to all principle-agent relationships except those partnership transactions which fall within the express provisions of sec. 178.06(1), Stats.

■ Section 178.06(1), Stats., states that a partner may bind the partnership by executing an instrument in the

partnership name,[4] only if the partner is apparently acting within the ordinary course of the partnership business and the third party does not know that the partner is acting beyond the scope of his authority. These limitations on the power of the partner to bind the partnership leave many potential actions of a partner unaddressed. For example, the statute does not address a purchase of real estate by a partnership whose usual way of business does not apparently include real estate transactions. Thus, we conclude a reasonable interpretation of the two statutes is that when the transaction falls within the express provisions of sec. 178.06(1), Stats., the partner "is an agent of the partnership," and sec. 178.06(1), controls; and when the transaction does not fall within those provisions, the partner "purport[s] to act as an agent," and sec. 706.03, Stats., controls.

The facts of this case are similar to those in *Marth v. Edwards,* 159 Wis. 2d 773, 465 N.W.2d 248 (Ct. App. 1990). In that case, William and Violet Edwards sued Greenbriar Partnership and Doerr, one of Greenbriar's partners, for breach of a real estate purchase agreement. They asserted that Swoboda, another Greenbriar partner who had signed in his own name

---

[4] When a partner executes an instrument individually, the partnership will be bound if the signing partner intended the partnership to be bound. *See, e.g.* Harold G. Reuschlein & William A. Gregory, *The Law of Agency and Partnership,* 292–93 (1990) Alan R. Bromberg & Larry E. Ribstein, 1 *Bromberg & Ribstein on Partnership* sec. 4.02(a) (1994). However, the party asserting that the individually signed instrument bound the partnership has the burden of proof and must overcome a strong presumption that a contract containing only an individual signature binds only that individual. Reuschlein & Gregory, *supra,* at 293.

the agreement to buy the real estate from them, was Greenbriar's agent. They further claimed that Swoboda had the apparent authority to bind Greenbriar and Doerr, making the partnership liable for damages resulting from the breach of the agreement. As is the case here, the circuit court granted summary judgment against the plaintiffs based on the statute of frauds provision of sec. 706.03(1), Stats. Thus, the plaintiffs were not given the opportunity to present evidence to support their claim that the transaction fell within the express provisions of sec. 178.06, Stats.

The court of appeals in *Marth* held that sec. 706.03(1), Stats., was "the more specific statute because it deals with an agent's apparent authority to bind principals to a real estate transaction. Section 706.03(1) controls." *Marth* 159 Wis. 2d at 780–81. Where two statutes are irreconcilable, the more specific prevails over the more general. *State v. Dairyland Power Co-op,* 52 Wis. 2d 45, 53, 187 N.W.2d 878 (1971); *In re T.P.L.,* 120 Wis. 2d 328, 333, 354 N.W.2d 759 (Ct. App. 1984). However, as stated above, the preferable result is to harmonize the statutes to avoid the conflict in the first instance. Therefore, the above language from *Marth* is hereby overruled.

Respondents argue that if apparent authority is all that is required for a purchase of real property, sec. 178.07, Stats. 1993–94,[5] of the Uniform Partnership

---

[5] Section 178.07, Stats. 1993–94, provides:

**178.07 Conveyance of real property of partnership. (1)** Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under the

Act, which controls partnership sales of real property, is superfluous. In construing statutes, this court will avoid a construction which makes a word in a statute superfluous. *Wis. Elec. Power Co. v. Public Service Comm.,* 110 Wis. 2d 530, 534, 329 N.W.2d 178 (1983). However, we do not agree that our interpretation of sec. 178.06, Stats., makes any portion of sec. 178.07, Stats., superfluous. Section 178.07, governs the partnership's right to recover real property when a partner conveys that property without apparent authority. The rights of the partners under the statute differ depending on how the property is titled. Thus, the section does more than state that a partner may bind the partnership by selling real property with only apparent authority, it also recognizes that a partnership can

provisions of s. 178.06(1), or unless such property has been conveyed by the grantee or a person claiming through such grantee to a holder for value, without knowledge that the partner, in making the conveyance, has exceeded the partner's authority.

(2) Where title to real property is in the name of the partnership, a conveyance executed by a partner, in the partner's own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under s. 178.06(1).

(3) Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under s. 178.06(1), unless the purchaser or the purchaser's assignee is a holder for value, without knowledge.

(4) Where the title to the real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in the partner's own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under s. 178.06(1).

(5) Where the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights in such property. ·

113

hold title to property in various names and that how title is held may affect the rights of the partners and the purchasers when a partner conveys partnership property with only apparent authority or without any authority at all.

Respondents also claim that sec. 706.03, Stats., must control because all but one of the sections of sec. 178.07, Stats., state that the authority requirement to bind partnerships is that of sec. 178.06(1), Stats. Respondents interpret that inclusion as a legislative recognition that sec. 178.06(1), was not clear and unambiguous enough for people to apply the apparent authority standard to transactions where partnerships convey real estate. Respondents, relying on the court of appeals reasoning in *Marth,* claim this ambiguity should be resolved by requiring express authority to bind a partnership in real estate purchases because, as the court of appeals in *Marth* stated, "Chapter 178, Stats., is not a vehicle for protection of those individuals involved in real estate transactions with partnerships." *Marth,* 159 Wis. 2d at 781. This interpretation misapprehends the legislative intent behind Chapter 178, Stats.

We conclude that the legislature intended Chapter 178, Stats., to both protect partners from one another and, contrary to Respondents' interpretation, also intended to protect persons who deal with partnerships. When construing a statute, the intent of the legislature must be derived from the act as a whole. *State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201 (1978). The use of the apparent authority concept in sec. 178.06, Stats., is an obvious example of the dual purpose of the Chapter. However, sec. 178.07, Stats., also has this dual purpose. For example, while the sec-

tion allows partnerships to recover property under some circumstances, several of the provisions of sec. 178.07, do not allow the partnership to recover property even though the partner who entered into the transaction did not have even apparent authority to sell the property. *See e.g.* sec. 178.07(1) (partnership cannot recover property originally titled in the partnership name that has been conveyed by the grantee to a holder for value, without knowledge); sec. 178.07(3), (partnership cannot recover property originally titled in the name of one or more partners from a purchaser or his assignee who is a holder for value, without knowledge). The inclusion of the apparent authority standard of sec. 178.06(1), is thus used in sec. 178.07, not only to show that a partner may convey real partnership property with only apparent authority, but also to serve as a limit as to which transactions made without express authority may be set aside.

Respondents also argue that it would be better public policy for the seller to bear the risk that the partner does not have express authority to make the real estate purchase than for the non-signing partners to bear the risk that one of their own will enter an unauthorized transaction. Respondents recognize that this interpretation would differ from the rule that apparent authority is all that is needed to bind a partnership to a sale of real estate. However, they argue that in real estate purchase transactions non-signing partners will be more likely to be unaware that the transaction is going to take place and thus have less ability to protect themselves.

We conclude that the better public policy is to place the risk that a partner will commit to a real estate purchase without proper authority on the non-signing

115

partners who have chosen to make that partner one of their business associates than to place the risk on an outsider. Although in this case it appears that the seller could have determined the scope of the partners' express authority with relative ease by examining the partnership documents, a rule which required the seller to determine the partner's express authority could require extensive inquiry into the business of the partnership, including attempts to discover any and all documents which may have limited the partner's authority after the original partnership documents were recorded. Further, any limit on the partner's authority would be binding on the seller whether it was recorded or not, or even if there was a conscious partnership decision not to reveal the limit, as may be the case for a document stating an upper limit for the purchase price. To place such a heavy burden on outsiders in an effort to protect non-signing partners from a breach of fiduciary duty by one of their chosen associates would be inequitable.

In conclusion, we hold that sec. 178.06(1), Stats., may control the transaction in this case. We therefore remand the case to the circuit court for a determination of whether the elements of that statute were satisfied in this transaction, i.e. (1) document signed in the partnership name or signed by a partner or partners individually with the intent to bind the partnership, (2) purchase was an act that was apparently the usual way of carrying on the business of the partnership, and (3) Wyss lacked knowledge of the absence of express authority.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court

for further proceedings not inconsistent with this opinion.

117