ESTATE OF SCHLICHT: SCHLICHT, Appellant, vs. BANK OF SHEBOYGAN, Trustee, Respondent.

*April 12—May 9, 1939.*

*H. Maxwell Manzer* of Madison, for the appellant.

For the respondent there was a brief by *Currie & Leberman* of Sheboygan, and oral argument by *George R. Currie*.

FRITZ, J.  The appellant, William M. Schlicht, is the sole beneficiary under a trust created by his father's will, which was probated in September, 1914.  At that time he was twelve years old.  Under the will the trustee was to use the income of the trust estate for the maintenance and education of the beneficiary until he was twenty-one years of age, and thereafter pay all the income to him.  Five thousand dollars of the corpus were to be paid to him when he was twenty-five years old, and he was to receive the remainder when he reached the age of thirty.  Adolph Pfister was appointed trustee in 1916, and upon his death in April, 1928, the Bank

of Sheboygan (hereinafter called the "bank"), which was appointed executor of his will, took charge of the trust estate. Among the assets there were bonds issued by the Chicago, Milwaukee, St. Paul & Pacific Railroad Company for $5,000; the Ashland Manufacturing District for $2,000; the Milwaukee University School for $1,000; and Catherine Nichols' note and mortgage for $5,000. On December 11, 1928, the bank, as such executor, petitioned the county court for an order allowing its final account covering the trust, and also for an order appointing it trustee thereof to succeed Pfister. The account listed as trust assets an amount in cash and also certain securities, including the four mentioned above. The par value of each security was stated in a column to the left thereof, and to the right thereof there were stated amounts which, including the cash, aggregated $34,921.72. The beneficiary, who was then twenty-six years of age, joined in the petition and consented to the entry of an order on December 20, 1928, allowing the account and appointing the bank successor trustee. On May 21, 1932, when the beneficiary was thirty years of age, he executed and delivered to the bank, as trustee, an instrument under seal, in which he acknowledged that he had received from the trustee $34,168.50 in full payment and satisfaction of all and every claim and demand whatever that he ever had against it for or on account of money or other property received by it in its capacity as trustee, and for which it was accountable as such trustee to him; and that in consideration of the sum paid to him he had and did thereby forever release and discharge it of and from all and every liability to him for and on account of money or other property received by it in its capacity as such trustee and from all and every liability, action, and cause of action ever existing against it in his favor on account of its trust as such trustee. Upon delivering that receipt and release, the beneficiary also executed an instrument in which he stated that he was thereby handing certain securities, which were listed therein, to the bank as his agent

to hold and manage for him in the manner stated therein. Among the securities thus listed there was also, in addition to those mentioned above, a bond for $1,000 issued by the International Match Corporation, which the bank, as trustee, had purchased in 1931. In the list there was again stated to the left of each item the par value of each security, and to the right there were stated amounts (somewhat lower as to some items) which were totaled at $34,168.50. At the foot of the instrument, by which Schlicht appointed the bank as his agent, there is an acknowledgment by the bank of the receipt of the listed securities, and an agreement to hold them in accordance with the terms of the instrument. That agreement was signed on behalf of the bank "by Ner Friedly, Manager of Trust Department." At that time no petition or final account was filed in the court by the bank, and there was no further court order or proceeding until Schlicht, on April 19, 1938, obtained an order requiring the bank to file its final account as trustee or show cause why it should not do so. On April 26, 1938, it filed an account showing the receipts and disbursements on account of the trust assets from December 31, 1931, the date of its last report, to May 21, 1932, when it, as trustee, delivered the assets to Schlicht and he receipted therefor in the sum of $34,168.50. On May 4, 1938, Schlicht, upon his affidavit stating that the final account disclosed that the securities issued by the five parties mentioned above were ineligible for the investment of trust funds, and that losses were sustained by retaining them, obtained an order requiring the bank to show cause why it should not be required to indemnify him for those losses. After some testimony showing the ineligibility of the securities for the investment of trust funds, and that losses had been incurred by reason thereof, had been introduced by Schlicht, upon the hearing pursuant to that order to show cause, it was agreed between counsel, upon the court's suggestion, that it would first consider and determine whether Schlicht's petition should be dismissed on the ground that,—

if there was any breach of trust by reason of the bank's continuing to hold securities ineligible for trust fund investment,—Schlicht's right to now question the same had become barred by his acquiescence and laches. Upon the issues in that respect, the court found the following (in addition to the foregoing facts) : That the Chicago, Milwaukee, St. Paul & Pacific Railroad Company bonds had been received by Pfister, as trustee, and correctly listed in all of his accounts as well as in the final account, which the bank filed as executor of Pfister's estate, and which was approved by Schlicht; that in Pfister's accounts the bonds of the Ashland Manufacturing District and the Milwaukee University School were first listed in 1926, and that the Catherine Nichols security was first listed in 1927; that Pfister furnished Schlicht with copies of each account so that he had actual knowledge as to the investment in the Chicago, Milwaukee, St. Paul & Pacific Railroad Company bonds for a considerable number of years, in the Ashland Manufacturing District and the Milwaukee University School bonds for eleven years, and in the Catherine Nichols security for ten years, before Schlicht made any claim against the trustee; that the International Match Corporation bond, which the bank bought, as trustee, on April 1, 1931, was shown in the annual account which it filed for the year 1931; that in its annual accounts filed in court, as successor trustee, it listed all of the securities in each account, and, in addition, it either mailed information regarding the trust income to Schlicht for the purpose of making out his income tax returns, or otherwise completed the returns for him; that he knew when Pfister died what investments were taken over by the bank, as successor trustee, and knew when he signed the receipt and agreement appointing the bank as his agent on May 21, 1932, that the same investments were still on hand, plus the International Match Corporation bond; that he was approximately twenty-seven years of age when he approved of the account filed by the bank, as executor of Pfister's will, and, in addition to being

a high-school graduate, he had had several years of college training; that although, as he testified, he first learned of his legal rights under the trust while attending law school in 1934 or 1935, he did nothing about the matter until he applied for the order to show cause in April, 1938, or, at least, until he consulted his attorney, in June, 1937; that the bank's administration of the trust from January 28, 1929, until Schlicht signed the final receipt and agency agreement on May 21, 1932, was personally handled by Ner O. Friedly, as manager of its trust department, and it was represented solely by him when the final settlement was made with Schlicht on May 21, 1932; and that Friedly died in January, 1933. In addition to the foregoing facts, it is undisputed that when there was a default under the Nichols note and mortgage, after Schlicht receipted for the securities in May, 1932, Schlicht obtained them from the bank and brought an action of foreclosure and acquired the property on a foreclosure sale under a judgment entered in 1936.

Upon those facts the court concluded that any right on the part of Schlicht to question the eligibility of any of the securities for trust-fund investment was barred by his acquiescence and laches; and that his application to compel the bank to account for the losses sustained must be denied. Those conclusions were warranted by the facts that until April, 1938, Schlicht did not make any claim or demand on the bank, or take any action to rescind or hold it responsible for loss sustained by reason of the ineligible securities, although he knew, or with the exercise of but ordinary care or diligence, could and would have known since December, 1928,—when he consented to the court's allowance of the bank's account, as the executor of Pfister's will,—that all of the securities, excepting the International Match Corporation bond were being held as trust investments; and, in respect to the latter, knew or likewise would have known since May 21, 1932,—when he receipted for the listed assets and intrusted them to the bank to manage, as his agent,—that it

was also being held as a trust asset; and in addition knew, and had ample opportunity to fully understand ever since that date the effect of the receipt and release which he then executed, and since 1934 or 1935 had the knowledge as to his legal rights under the trust, which he acquired as a law student. In the meantime, the manager of the bank's trust department, Ner Friedly, who had conducted the transactions with Schlicht in relation to the trust, had died in January, 1933. As the trial court rightly said, "Mr. Friedly is not here to testify as to what took place at the time of the signing of the release and the agency agreement, and as to what information he gave the beneficiary with reference to the securities, and what the beneficiary might have said to him. There cannot now be a free, open, full hearing and presentation of the matter by both sides, so that the court may find the facts as to this important transaction. It is the court's opinion that it would be unjust to the trustee to require it now to go to trial on a matter which must greatly revolve around the transaction which took place on May 22, 1932." On the other hand Schlicht, by retaining ownership and all rights to the trust assets, and withdrawing the Nichols security from the bank, and bringing a foreclosure action thereon which resulted in a judgment under which he bought in the property, can be deemed to have ratified the wrongful investment therein and holding thereof by the trustee. Under the circumstances, there are applicable the principles stated in the Restatement, Trusts, to wit:

§ 219 (1) "The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable."

§ 219 (1) *b* "The length of time necessary to bar the beneficiary from holding the trustee liable for breach of trust depends upon the circumstances. In the absence of special circumstances the beneficiary is barred if the period of the

statute of limitations applicable to actions at law in analogous situations has run."

§ 219 (1) *f* ". . . If witnesses or parties have died between the time when the breach of trust was committed and the time of suit, the suit may be barred by laches in a less time than it would otherwise be barred, since under such circumstances it may have become difficult as a result of the delay of the beneficiary in suing to ascertain the facts and to do justice."

Those principles were applied in *Estate of Grotenrath,* 217 Wis. 109, 112, 258 N. W. 453, when we said,—

"if Edward [the *cestui que trust*] concurred or acquiesced in the carrying of the stocks and securities by the trustees with knowledge of the manner of the form in which they were held, he was barred from relief for the breach of the trust in so holding them. . . . While there is here no finding of knowledge on his part, the facts clearly show that he had knowledge as to the holding of the machinery company stock, and the finding in view of the admitted facts barred him from relief as to that stock."

See also 65 C. J. p. 818, § 699; *Ross v. Savings Investment & Trust Co.* 120 N. J. Eq. 87, 184 Atl. 183; *In re Macfarlane's Estate,* 317 Pa. 377, 177 Atl. 12. It follows that the order must be affirmed.

*By the Court.*—Order affirmed.