DOSTAL, by Guardian *ad litem,* Appellant, vs. MAGEE and another, Respondents.

*March 7—April 3, 1956.*

510

For the appellant there were briefs by *Doar & Knowles* of New Richmond, and oral argument by *John Doar*.

For the respondent John F. Magee there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox*.

GEHL, J.   When the action was commenced Magee was nineteen years of age. One Hines had been appointed guardian of his estate. Summons was served upon him on June 16, 1953. It has never been served upon his guardian. No notice of injury has been served.

Sec. 262.08 (2), Stats., provides that service of a summons shall be had:

"If against a person for whom a guardian has been appointed, by delivering within the state a copy thereof to such guardian and to the defendant personally."

This statute, which is in fact a rule of court adopted by authority of the provisions of sec. 251.18, Stats., was adopted after study by and recommendation of the judicial council. Plaintiff urges that for the purpose of giving it proper construction we should refer to proceedings of the council and that a study thereof would demonstrate that it was not intended that in a case such as this service upon the guardian be required. We may assume, without deciding, that for the purpose of removing an ambiguity, resort may be had to the proceedings of the council; but to warrant such action there must appear indefiniteness or ambiguity. Neither appears in this statute. The requirement that a summons shall be served "if against a person for whom a guardian has been appointed, by delivering within the state a copy thereof to such guardian and to the defendant personally" is clear and unambiguous and not subject to construction. We think that it is immaterial that Hines was appointed guardian of only Magee's estate and not of his person. As guardian of Magee's estate he has "the care and management" of his property, and it is, of course, that which plaintiff seeks to recover and that with which in this instance Hines is to be concerned, not with Magee's "custody . . . and the care of his education" as he would be if he were guardian of his person. Sec. 319.01 (2).

Plaintiff contends that to construe the statutes literally would require that one, commencing an action against a minor, search the records in each of the counties of the state to ascertain whether a guardian had been appointed for him, and that it would be absurd to adopt a construction

of the statute which would so burden the plaintiff. If that were the only way in which one might ascertain the fact it might afford an effective argument for a change of the statute. It is not the only means however. At the examination of the defendant had before trial in this case the answer to a single question would have provided this information.

It is also suggested that to construe the statute as we do would be to render it unconstitutional. Manifestly the statute was intended for the protection of minor defendants. The minor defendant in this case is not complaining that he is given inadequate protection by the statute. We are unable to say that anyone else may complain. Plaintiff does little more in her brief than to suggest that the statute is invalid and does not point out any reason why it should be held that this court is without power to adopt the rule and make it effective as a statute.

We conclude that the service of summons upon the defendant personally without service thereof upon his guardian was ineffectual to confer jurisdiction of his person.

Magee became twenty-one years of age on March 24, 1955, and on June 4, 1955, caused to be served upon plaintiff notice that he appeared specially for the purpose of objecting to the jurisdiction of the court over his person, and that he would move to set aside service of the summons upon him for the reason that it had not been served upon his guardian. After hearing and on November 1, 1955, service of the summons upon Magee was ordered set aside. Plaintiff appeals from that order among others.

On the day following service of the summons Magee was served with a subpoena and notice of adverse examination. He gave the papers to his father who was an attorney. On June 23, 1953, Magee, his father, and Wendell Petersen, a member of the law firm of Gwin & Petersen, appeared for the examination; Petersen, in the presence of Magee and his father, entered his appearance for Magee and the Insurance

Company. Magee read a transcript of the testimony given and observed that Petersen had entered his appearance for him, but testified that he had never given permission to anyone to appear for him. On July 10, 1953, Petersen served upon plaintiff's attorneys notice of retainer by and of appearance for Magee and the Insurance Company. Because the extent of plaintiff's disability was not then determinable, plaintiff's attorneys and Petersen agreed that the former might have indefinite time to serve a complaint. On February 19, 1955, a verified complaint was served upon Magee personally, and on March 8, 1955, an answer prepared by Gwin & Petersen and reciting that it was made on behalf of both defendants, was served upon plaintiff's attorneys; in the verification made by Petersen it is stated that he is one of the attorneys for both defendants, that verification is made with authority and on behalf of both, and that it is made by Petersen instead of by Magee because the latter does not reside in the county of Petersen's residence. On March 9, 1955, Petersen wrote Magee a letter in which he called attention to the fact that the demand made in the complaint is in excess of the policy limits and informed him that they, the attorneys, would make every effort to hold the amount of recovery within the policy limits but that he might employ other counsel to protect his interest. Magee read the letter and turned it over to his father. Petersen heard nothing from Magee in response to the letter. On March 19, 1955, Gwin & Petersen, on behalf of both defendants, served upon plaintiff's attorney a notice of trial. It appears that Magee's father took an active interest in the matter and advised with his son with reference thereto. The son knew that before he had reached his majority, his father had had several conferences with respect to the matter with Petersen.

If plaintiff had had legal capacity to employ an attorney, we would have little difficulty in determining that by his acquiescence in the acts of Petersen he had engaged him. As

a minor, however, he had no such capacity under the circumstances.

Plaintiff contends that the act of Magee in employing Petersen was voidable and that, therefore, the appointment could have been ratified by him after he reached majority. She claims also that there was such ratification. Magee contends that the appointment of Petersen, if it had been made, was void and, therefore, not susceptible of ratification. 43 C. J. S., Infants, p. 165, sec. 74.

Assuming, without deciding, that the employment of Petersen was voidable as is claimed by plaintiff, it is then to be determined whether Magee ratified his act of employing Petersen after he became of age.

"An infant's ratification of his contract may be either express or implied, as long as his intention to be bound by the contract is *clearly manifested.*" 43 C. J. S., Infants, p. 167, sec. 74. (Italics ours.)

"Ratification results where the former infant freely and without duress decides to let the contract stand, and *definitely manifests* that election." 27 Am. Jur., Infants, p. 804, sec. 76. (Italics ours.)

Plaintiff concedes that after Magee became twenty-one years of age he took no affirmative action which might be construed as a manifestation of his intention to deal as a client of Petersen's. But it is insisted that there were occurrences between that date and May 21, 1955, which should be treated as indicating a purpose to continue the relationship of attorney and client. On April 15, 1955, an adverse examination of plaintiff was conducted. Neither Magee nor his father was present. Petersen was present and stated that he was appearing for both defendants. The matter of possible settlement was discussed by the attorneys on that day but Magee took no part therein. At the opening of a term of court on April 18, 1955, Petersen noted that he was appearing for both defendants. Magee was not in court.

He had read in a newspaper that his case was pending. The case was discussed by Petersen and plaintiff's attorneys several times thereafter and Petersen also discussed it on one occasion after March 24th and before May 21, 1955, with Magee's father. It is undisputed that at no time after Magee became twenty-one years of age did he ever discuss the case with Petersen.

On May 21, 1955, Magee wrote Petersen advising that he had retained other counsel to represent him and that he disaffirmed and repudiated any acts or appearances made by Petersen on his behalf. Steps were then taken to set aside service of the summons.

None of these circumstances or occurrences can be construed as evidence suggesting that Magee, after he reached the age of twenty-one, intended that Petersen should continue to serve as his attorney. On the contrary the evidence leaves no doubt that Magee had no intention of ratifying an employment contract previously made. That his father consulted with Petersen after Magee reached his majority is immaterial; ratification of an infant's contract upon reaching majority is one personal to and exercisable only by him. 27 Am. Jur., Infants, p. 803, sec. 74.

Plaintiff contends that Magee is estopped to assert the defense of defective service for the reason that he remained silent after he had attained his majority. She relies principally upon *Cleveland v. Hopkins* (1882), 55 Wis. 387, 13 N. W. 225. If in no other respect the case were distinguishable from those at bar, it must be distinguished upon the ground that it did not involve service of process upon and the conduct of an infant. That the rule regarding estoppel as applicable to infants requires much more than is required in the case of adults appears clearly in 43 C. J. S., Infants, p. 86, sec. 26, where, among other things, it is said that the conduct of an infant to constitute estoppel must have been intentional and fraudulent. A similar rule is applied where the infant, upon reaching his majority, seeks to avoid his

contract made during infancy, 27 Am. Jur., Infants, p. 797, sec. 64 *et seq.;* 43 C. J. S., Infants, p. 170, sec. 75 *et seq.* It is said in 27 Am. Jur., Infants, p. 797, sec. 64, with respect to an attempted avoidance by an infant upon attaining his majority that "for the prevention of fraud and unfairness a court of equity may decree an estoppel."

Magee's mere silence does not constitute fraud. In *Grauman, Marx & Cline Co. v. Krienitz* (1910), 142 Wis. 556, 562, 126 N. W. 50, which involved an application to vacate a judgment taken against a minor on the ground that he had not been represented by a guardian *ad litem,* the court recognized that under some circumstances a minor may by his fraud estop himself from avoiding a contract on the ground of infancy.

". . . but if the minor merely fails to impart information of his age, unasked, there being no misrepresentation of fact and no artifice employed to mislead the other party, he is not guilty of that species of fraud which will estop him from pleading his minority to avoid the contract."

The order of November 1, 1955, by the terms of which the service of the summons was set aside must be affirmed.

An order was entered on August 15, 1955, continuing the hearings upon Magee's motion to set aside the service of the summons and upon a motion of Gwin & Petersen to remove from the record their appearance on behalf of Magee. The order was made to permit the taking of testimony. Plaintiff appeals therefrom for the reason that it limits the scope of the examination. There is also an appeal from a similar order dated October 15, 1955, which plaintiff describes as one limiting an examination of a claim manager of the defendant Insurance Company. Plaintiff treats both these orders as limiting the scope of adverse examinations. They are not appealable, *Will of Block* (1953), 264 Wis. 471, 59 N. W. (2d) 440. Furthermore, the question is now moot since it appears that the examinations were desired in connection with

the issue made by the motion of the Magees to set aside the service of the summons, which motion we have decided was properly granted.

*By the Court.*—Orders affirmed.

Currie, J. (*dissenting*). I must respectfully dissent from the majority because I am of the opinion that it was incumbent upon John Magee to disaffirm his employment of Petersen as his attorney within a reasonable time after John arrived at the age of twenty-one years and this he failed to do.

The better-reasoned authorities hold that an infant's employment of an agent or attorney is voidable and not void. 2 Am. Jur., Agency, p. 20, sec. 12, and Anno. 31 A. L. R. 1001. Furthermore, the employment of an attorney can be effected through an agent. 5 Am. Jur., Attorneys at Law, p. 279, sec. 30. When John was served with the original summons in the two actions in June of 1953 he turned them over to his father as his agent to take whatever steps might be necessary to protect John's interest and the father made the arrangements whereby Petersen, or his law firm, was engaged to act as attorney for John in the actions.

John at least knew from what transpired at the taking of the adverse examination on June 23, 1953, and his reading of the transcript thereof soon thereafter, that Petersen was appearing in the actions as John's attorney. Thus not only had his father as his agent made the arrangement which resulted in the retainer of Petersen, but John was fully apprised of such fact long in advance of his twenty-first birthday, which occurred on March 24, 1955. On April 14, 1955, John read in the Prescott paper that the two actions were on the calendar of the spring term of court for Pierce county which was to open on April 18th.

An infant can ratify a voidable contract made by him during his minority by failing to disaffirm the same within a reasonable time after arriving at his majority. Annotation

entitled, "Failure to disaffirm as ratification of infant's executory contract," 5 A. L. R. (2d) 7, and cases cited therein. The reasonableness of the time must be determined from the facts and circumstances of each particular case. *Hobbs v. Hinton Foundry, Machine & Plumbing Co.* (1914), 74 W. Va. 443, 82 S. E. 267, Ann. Cas. 1917D 410.

Under the facts and circumstances of the instant case where John knew in April, 1955, that Petersen was retained to represent him as attorney, that Petersen only the month before had written him advising him that the plaintiff's claimed damages greatly exceeded the policy limits and suggesting the employment of other counsel, and that the actions were set for trial at the term of court commencing April 18th, there was an immediate duty on his part to speak out and disaffirm his prior voidable retainer of Petersen. This he failed to do until after the two-year period available to plaintiff for giving the notice of injury required by sec. 330.19 (5), Stats., had expired on May 6, 1955. Such notice was not required to be given by the plaintiff unless John disaffirmed the voidable retainer of Petersen.

Comment *a,* Restatement, 1 Agency, p. 234, sec. 94, deals with the question of when silence or failure to act on the part of a principal may constitute ratification, and states:

"Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent may be inferred."

John delayed an unreasonable time in disaffirming his voidable retainer of Petersen as his attorney, and, therefore, the order appealed from, which set aside the service of the summons on John, should be reversed.