The ESTATE OF Steven Michael BYDALEK, deceased, by Lori Bydalek, as Special Administrator, Plaintiff-Respondent,†

v.

METROPOLITAN LIFE INSURANCE COMPANY and Executive Life of New York, Defendants-Respondents,

Frank BYDALEK, Sr., Defendant-Appellant.

Court of Appeals

*No. 97–1354. Submitted on briefs April 24, 1998.—Decided July 1, 1998.*

(Also reported in 584 N.W.2d 164.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Linda S. Isnard* and *Gilbert J. Berthelsen* of *Capwell & Berthelsen* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally Yule Mengo, Chris-*

*tine M. Genthner* and *Loren J. Keating* of *Sally Yule Mengo, S. C.* of Kenosha.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. The issues on appeal concern the distribution of the remaining proceeds of a personal injury structured settlement negotiated on behalf of the deceased, Steven Michael Bydalek, while he was under a guardianship as an incompetent. On the application for the annuity contract which funded the settlement, Steven's personal injury attorney designated Frank and Katherine Bydalek, Steven's parents and his guardians, as beneficiaries of the annuity payments in the event of Steven's death. In this declaratory judgment action brought by Steven's estate, the circuit court ruled that neither the attorney nor the guardians had the authority to make the beneficiary designation. As such, the court determined that Steven's estate was entitled to the remaining proceeds under the annuity contract. Frank appeals.[1]

Frank presents two arguments on appeal. First, he contends that Steven's attorney had the authority to designate a beneficiary in the annuity application. Second, he contends that even if the attorney did not have such authority, Steven's failure to alter the beneficiary designation after he regained his competency and the guardianship was terminated ratified the designation. We agree that Steven ratified the beneficiary designation. Therefore, it is of no consequence whether the attorney had the authority to make the beneficiary designation and we do not address that issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if a decision on one point disposes of

[1] Katherine Bydalek is deceased.

appeal, we need not decide other issues raised). We reverse the order of the circuit court.

## FACTS

The facts are not in dispute. Steven was seriously injured in a motor vehicle accident on February 19, 1984, when a truck in which he was a passenger was struck by a train. Steven suffered severe bodily injuries, including head trauma which caused significant mental impairment. Shortly after the accident, Steven's parents retained Attorney Charles Richards to represent Steven regarding the accident. Attorney Martin B. Antaramian was appointed Steven's guardian ad litem. On April 4, 1984, Steven was declared incompetent and his parents, Frank and Katherine, were appointed as his guardians.

Richards and Antaramian commenced a civil suit on Steven's behalf on March 20, 1984, naming as defendants Chicago and North Western Transportation Company, Allstate Insurance Company and the driver of the truck. The lawsuit was settled on March 27, 1986, when Steven, through his guardians and his guardian ad litem, entered into a settlement and release agreement with the defendants.

Under the agreement, Chicago and North Western agreed to make two types of deferred payments which are at issue in this case.[2] The first type called for guaranteed monthly payments for the first year in the amount of $1500 and monthly payments thereafter to increase "at a compound 4% rate annually." These payments were for the remainder of Steven's life, and in

---

[2] Under the agreement, Allstate also made a lump-sum payment in the amount of $985,180. This payment is not at issue in this case.

the event of Steven's death prior to the receipt of the 360th payment, the payments would continue until the 360th payment and were to be made "in accordance with the beneficiaries chosen by [Steven] or his representatives." The second type of payment called for guaranteed periodic payments every five years as follows: (1) $100,000 on May 1, 1991, 1996 and 2001; (2) $150,000 on May 1, 2006 and 2011; and (3) $200,000 on May 1, 2016. The agreement provided that both types of payments were to be funded by an annuity.

When arranging for the annuity, Chicago and North Western contacted Richards inquiring as to who the beneficiaries of the payments should be in the event of Steven's death. Richards advised that the beneficiaries should be Steven's parents, Frank and Katherine, and that the contingent beneficiary should be Steven's estate. Chicago and North Western then applied for the appropriate annuity from Executive Life of New York and assigned its obligation to make the periodic payments to First Executive Corporation. Frank and Katherine were named as the beneficiaries in the annuity application. In due course, the annuity contract was issued and the payments commenced.

On July 1, 1986, Steven's guardianship was terminated based upon the guardianship court's determination that Steven was competent and "of sound mind sufficient to manage his own personal financial affairs." Thereafter, all the annuity payments were made directly to Steven. On October 13, 1995, Steven executed his last will and testament with the assistance of counsel. The will did not address the beneficiary designations stated in the annuity application. At no time prior to his death did Steven alter the beneficiary designation.

Steven died on January 30, 1996. On May 3, 1996, the probate court appointed Lori Bydalek, Steven's sister, as special administrator of Steven's estate for the purpose of commencing a declaratory judgment action seeking an order directing that the remaining payments under the structured settlement be paid to Steven's estate. The named defendants in the action were Frank, Metropolitan Life Insurance Company[3] and Executive Life of New York. The complaint alleged that Frank had gained his status as a beneficiary by means of fraud, undue influence and breach of fiduciary duty while Steven's guardian. The Estate requested that the circuit court set aside the designation of beneficiaries and direct that all future periodic monthly payments and lump-sum payments be made to Steven's estate.

Frank's answer denied the complaint's material allegations. He also brought a motion for summary judgment. The Estate responded with its own motion for partial summary judgment as to the periodic five-year payments. The Estate argued that, unlike the provision in the settlement agreement which provided for a beneficiary regarding the monthly payments, no such equivalent language existed as to the periodic five-year payments.

In the context of these competing motions, an issue arose concerning the authority of Richards to make the beneficiary designation.[4] Frank requested that the

[3] The complaint alleged that Metropolitan Life Insurance Company was responsible for funding the payments owed by Executive Life of New York.

[4] In his summary judgment arguments to the circuit court, Frank contended that he and Katherine had no part in, or knowledge of, Richards' nomination of them as beneficiaries in the annuity application. The Estate responded that this asser-

court order Metropolitan Life to make payments to him in accordance with the terms of the settlement agreement.

The circuit court rejected Frank's summary judgment motion and granted full, not partial, summary judgment to the Estate as to all the payments called for under the agreement. In support, the court stated in part: "I do not find that either Attorney Richards or . . . Mr. Frank Bydalek or Mrs. Bydalek, then living, had the authority to make a designation. . . . [T]herefore, it's a nullity, and that the proceeds of this settlement agreement in all respects are the property of the estate of Steven Bydalek." Because of this ruling, the court was not required to address Frank's argument that Steven had ratified the beneficiary designation. Frank appeals.[5]

## DISCUSSION

We review an order for summary judgment de novo, using the same methodology as the circuit court. *See Village of DeForest v. County of Dane*, 211 Wis. 2d 802, 808, 565 N.W.2d 296, 298 (Ct. App. 1997). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *See id.*

Frank argues that the circuit court improperly granted judgment to the Estate because Richards, as

tion was not supported by Frank's summary judgment affidavit. We agree. That affidavit, while otherwise reciting the history of this case, does not state that Frank and Katherine had no knowledge of their nomination as beneficiaries. Instead, the affidavit is silent on this matter.

[5] Besides Katherine, Richards and Antaramian were also deceased at the time of the circuit court proceedings in this case.

Steven's attorney, had the authority to designate a beneficiary in the annuity application. Alternatively, Frank argues that even if Richards lacked the requisite authority to designate the beneficiaries, Steven's conduct after he regained competency and the guardianship was terminated ratified Richards' designation. If we accept this latter argument, then we do not have to address Frank's first argument.

## A. RATIFICATION

■

The parties do not cite to, nor have we found, any cases which have applied the ratification doctrine in a guardianship case. However, the doctrine of ratification has long been recognized in Wisconsin law and has been applied in other settings. *See, e.g., Dostal v. Magee*, 272 Wis. 509, 515, 76 N.W.2d 349, 352 (1956) (considering whether the defendant, upon reaching majority, ratified an employment contract made as an infant); *McDermott v. Lumbermen's Nat'l Bank*, 236 Wis. 554, 566–67, 295 N.W. 784, 790 (1941) (considering whether distributees of a trust fund ratified the actions of the trustee, a bank); *Schlicht v. Bank of Sheboygan*, 231 Wis. 324, 330, 285 N.W. 730, 732 (1939) (plaintiff's actions following breach of trust deemed to have ratified the wrongful actions of the trustee).

Black's Law Dictionary defines ratification as, "[i]n [the] broad sense, the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act." Black's Law Dictionary 1261 (6th ed. 1990). It is "[t]he affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Id*. Ratification may be

express or may be inferred from known circumstances or a person's actions. *See id*; *see also* GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUST AND TRUSTEES § 942, at 530–31 (rev. 2d ed. 1995) ("Ratification may occur by an express statement of the attitude of the beneficiary . . . or ratification may be implied from the conduct of the beneficiary, for example, from the acceptance of the results or benefits of the act in question, without a claim that there had been a breach.").

The Estate contends that there is no evidence showing that Steven ratified the beneficiary designation. From this premise, the Estate contends that Frank's ratification argument violates the principle that ratification cannot be based on "mere silence and failure to repudiate" unless the principal has full knowledge of all material facts relating to the act of the person acting as the agent. *See Wyss v. Albee*, 183 Wis. 2d 245, 262, 515 N.W.2d 517, 523 (Ct. App. 1994), *rev'd on other grounds*, 193 Wis. 2d 101, 532 N.W.2d 444 (1995). However, we conclude that Steven's conduct after he regained his competency constituted more than mere silence. Upon regaining competency, Steven continued to receive both his monthly and lump-sum payments for nine and one-half years. Although obviously aware of the annuity payments, Steven took no action to alter the existing beneficiary designation—not even when he executed his last will and testament in October 1995 with the assistance of legal counsel.

We acknowledge that this history does not expressly establish that Steven consciously reflected on the beneficiary designation. However, the law does not require express knowledge of the voidable act. Rather, the person must have knowledge of "all mate-

rial facts relating to the act." *Id.* at 262, 515 N.W.2d at 523 (quoted source omitted). In *Grotenrath v. Grotenrath*, 217 Wis. 109, 111, 258 N.W. 453, 454 (1935), the trustee's account was challenged on the grounds that the trustee had illegally invested a portion of the corpus in the stock of a private business corporation while the beneficiary was a minor. The supreme court held that even though the beneficiary did not know of the illegality of the investment, his knowledge of the existence of the stock after attaining majority, coupled with his failure to object to the investment, barred any challenge to the trustee's accounting. *See id.* at 112, 258 N.W. at 455. The same logic applies here. The summary judgment evidence establishes that Steven had knowledge of the annuity contract and its benefits. He accepted those benefits for over nine years after regaining his competency but never challenged or changed the designated beneficiaries. We hold that this conduct demonstrates knowledge of the material facts relating to the annuity contract and the beneficiary designation.

Ultimately, the question before us presents two competing choices as to the appropriate rule of law: (1) we can require a former incompetent to revisit all of the guardian's decisions having a future impact and to expressly ratify those decisions if they are to be carried out; or (2) we can presume, absent express repudiation, that the former incompetent has impliedly ratified the guardian's decisions if the evidence establishes that the former incompetent was aware of his or her interest in the property and that the guardian previously had decision-making authority regarding the property. We conclude that the latter is the better law and is in keeping with the principles of ratification law which we have already cited in other contexts. To hold otherwise

748

would place an unreasonable burden on a former incompetent.

Fairness considerations also influence our decision. Had Steven never been incompetent, but had nonetheless delegated the management of his affairs to his parents and subsequently withdrawn that authority, the Estate's challenge to the beneficiary designation would clearly be meritless. Under those circumstances, and absent other proof to the contrary, we would properly presume that Steven knew the state of his legal affairs. We do not see why the result should be different simply because Steven was *once* incompetent. When Steven overcame that disability, the guardianship court determined that he was "of sound mind sufficient to manage his own personal financial affairs." At that time, Steven rightfully regained full control and authority over his affairs for the duration of his life. If he was dissatisfied with the beneficiary designation, he, like any other competent person, presumably would have changed it. He did not.

We also appreciate that competent persons sometimes ignore important matters. Thus, it may well be that Steven simply ignored the beneficiary designation. But that consequence was not the product of Steven's incompetency. Rather, it was the product of Steven's neglect *during his competency*. Thus, whether the retention of Frank and Katherine as beneficiaries was the product of Steven's conscious consideration of the issue or his benign neglect, it nonetheless was the product of conduct taken by a person with a rational mind.

We also deem it important that this case presents no evidence or claim that Frank and Katherine's status as beneficiaries was information which was inaccessible to Steven or clandestinely hidden from him. *See*

*McDermott*, 236 Wis. at 565–67, 295 N.W. at 789–90 (distributees held not to have ratified a bank's improper investments where the bank had engaged in concealment of the improper investment and had committed a fraud upon the court).

■

Assuming that Richards exceeded his authority by designating Frank and Katherine as beneficiaries or that Frank improperly influenced Richards to make the beneficiary designation, we hold that Steven's conduct after termination of the guardianship confirmed Richards' otherwise voidable act.

### B. SCOPE OF THE BENEFICIARY DESIGNATION

Having rejected the Estate's contention that it is entitled to all of the payments called for under the annuity contract, we next address the Estate's fallback argument that it is entitled, at a minimum, to the periodic five-year lump-sum payments. The Estate's argument is premised upon the fact that while the monthly payment provisions in the settlement agreement provide for a beneficiary in the event of Steven's death, the periodic five-year payment provision does not. The Estate contends that the settlement agreement is clear on this point.

If this issue concerned only the settlement agreement, we might agree with the Estate. However, the settlement agreement was followed by the annuity application and the annuity contract. The application recited the beneficiaries without distinction between the types of payment called for in the settlement agreement. The same is true of the annuity contract which states in part:

750

Beneficiary. The beneficiary shall be the person the owner names in the application, or changes by written request signed while the annuitant is living. The beneficiary will receive the Proceeds of this contract upon the death of the annuitant.[6]

Like the application, the contract does not differentiate between the monthly and periodic lump-sum payments. Instead, it provides without distinction that the beneficiary will receive the payments in the event of Steven's death.

In this case, the settlement agreement could not, and did not, exist in a vacuum. To the contrary, the agreement expressly recognized and required an annuity contract to fund the payments of the monies called for under the agreement. Thus, the settlement agreement was preliminary because it expressly required a further future contract between the parties. A prior preliminary agreement, "in so far as it is covered by, or in conflict with, the final contract," is "merged in or excluded by the contract finally made." *Ball v. McGeoch*, 81 Wis. 160, 171, 51 N.W. 443, 446 (1892) (quoted source omitted).

Here, the annuity application and annuity contract represent the ultimate agreement between the parties regarding the payments of the monies called for under the settlement agreement. Unlike the settlement agreement, the annuity contract does not make any distinction as to the remaining payments in the event of Steven's death. Instead, this contract provides

---

[6] We note that because the copy of the annuity contract contained in the record is illegible, we have used that portion of the contract quoted in Frank's brief. The Estate does not dispute the accuracy of that quote.

that the designated beneficiary is entitled to both categories of payments. We reject the Estate's claim to the periodic five-year payments.

## CONCLUSION

We conclude that Steven, after regaining competency, ratified the beneficiary designation made in the annuity application. We further conclude that the beneficiary designation travels to both the monthly and periodic lump-sum payments under the settlement agreement. We do not need to address the issue of whether the trial court erred by deciding that Richards had no authority to make a beneficiary designation while Steven was incompetent.

*By the Court.*—Judgment and order reversed.