Holly PARSONS, a minor, by her Guardian ad Litem, John C. Cabaniss, Plaintiff-Appellant,†

Michael PARSONS and Laura Parsons, Plaintiffs,

UNITED HEALTHCARE INSURANCE COMPANY, Subrogated-Plaintiff,

v.

AMERICAN FAMILY INSURANCE COMPANY, Defendant,

Peter KLUG and Jennifer Klug, Defendants-Third-Party Plaintiffs-Respondents,

v.

GENERAL CASUALTY COMPANY, Third-Party Defendant-Respondent.

Court of Appeals

*No. 2006AP2481. Submitted on briefs June 6, 2007. —Decided August 29, 2007.*

2007 WI App 211

(Also reported in 740 N.W.2d 399.)

† Petition to review denied 1/22/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *O. Thomas Armstrong, John C. Cabaniss* and *Rachel N. Schepp* of *von Briesen & Roper, S.C.,* Milwaukee.

On behalf of the third-party-defendant-respondent, the cause was submitted on the brief of *James W. Mohr, Jr.* of *Mohr & Anderson, LLC,* Hartford.

Before Brown, C.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Holly Parsons appeals from an order that dismissed all claims against Peter and Jennifer Klug for injuries Parsons suffered in an automobile accident. The court held that when Parsons cashed the $100,000 check that followed an offer of judgment, she released the Klugs from all liability arising from the accident. The court dismissed all claims against the Klugs. Parsons argues that the court erred when it enforced the settlement because all settlements involving a minor must be approved by the court and, further, that her negotiation of the $100,000 check did not constitute an accord and satisfaction with regard to her claim against the Klugs. We disagree and affirm the order of the circuit court.

## BACKGROUND

¶ 2. Parsons' complaint alleged the following: On January 13, 2003, three teenagers were in a car driven by Cassandra Remmel, who was sixteen at the time. Remmel lost control of the car and it began to swerve. Brett Klug, a front- seat passenger, pulled on the emergency brake, which substantially contributed to Remmel's loss of control. The car crashed into a ditch and overturned. Parsons, another passenger in the car, was ejected from the car and sustained serious injuries.

¶ 3. Parsons, along with her parents, sued Remmel's insurer, American Family Insurance, and Klug's insurer, General Casualty Company. Asserting that the policy limits of these two insurers would be insufficient to cover the damages, Parsons also claimed underinsurance benefits from State Auto Insurance Company of Wisconsin. A guardian ad litem repre-

633

sented Holly Parsons' interests in the suit. Neither the Remmels nor the Klugs were named defendants in Parsons' lawsuit.

¶ 4. After a period of pretrial discovery, General Casualty decided not to contest Parsons' claim. It delivered to the GAL an offer of judgment for its $100,000 policy limit. In exchange, General Casualty asked for a *Pierringer*[1] release. The offer of judgment provided, "Pursuant to § 807.01, Wis. Stats., defendant, General Casualty Company of Wisconsin, offers to permit plaintiff to take judgment against it in the amount of [$100,000] with statutory costs and fees." The offer was directed to Holly Parsons along with her parents, Michael and Laura, in care of the GAL.

¶ 5. The GAL accepted the offer of judgment, stating, "Plaintiffs accept Defendant General Casualty Company of Wisconsin's Offer to Allow Judgment to be entered against it for [$100,000] with costs." Judgment was entered against General Casualty on August 6, 2003. One week later, General Casualty sent a check to the GAL. The check was in the amount of $100,000 and made out to Holly Parsons and the GAL and contained the following notation: "Full settlement, claims against General Casualty and the Klug family." On October 31, 2003, the GAL filed a satisfaction of judgment with the circuit court, indicating that General Casualty had fully paid and satisfied the judgment.

¶ 6. Just days before the satisfaction of judgment was filed, Parsons amended her complaint to include Peter and Jennifer Klug, Brett Klug's parents. The Klugs tendered the defense to General Casualty, but

---

[1] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

General Casualty responded that it had no duty to defend. The Klugs then sued General Casualty.

¶ 7.   On March 17, 2004, General Casualty moved the circuit court to hold that the $100,000 payment to Parsons discharged all liability for both General Casualty and the Klugs or, in the alternative, to compel the return of the payment and allow General Casualty to proceed with the defense of the Klugs. The court granted General Casualty's motion, holding that the cashing of the $100,000 check constituted a release of claims against General Casualty as well as the Klugs. Parsons appeals.

## DISCUSSION

¶ 8.   Parsons presents two issues for review. She first contends that the notation on the $100,000 check does not constitute an accord and satisfaction of the claims against the Klugs because the check was the culmination of a judgment taken against General Casualty alone. She also argues that, in the event the check does constitute an accord and satisfaction of claims against the Klugs, the settlement in its entirety is unenforceable against Parsons, a minor, because there was no court approval as required by WIS. STAT. § 807.10 (2005–06).[2]

¶ 9.   We begin with the question of whether Parsons' cashing of the check demonstrated an accord and satisfaction of claims against the Klugs. An accord and satisfaction is an agreement to discharge an existing disputed claim and constitutes a defense to an action to

_____

[2] All references to the Wisconsin Statutes are to the 2005–06 version.

enforce the claim. *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979). The rule rests "not only on principles of contract law but on principles of sound public policy, that is, interests of resolving disputes informally without litigation and of fairness." *Flambeau Prods. Corp. v. Honeywell Info. Sys. Inc.*, 116 Wis. 2d 95, 110–11, 341 N.W.2d 655 (1984). However, the doctrine of accord and satisfaction has safeguards to protect claimants from overreaching by defendants. First, there must be a good faith dispute about the debt and, second, there must be reasonable notice that the check is intended to be in full satisfaction of the claim. *See id.* at 111. Parsons argues that neither safeguard was present here.

¶ 10. Parsons first asserts that there was no good faith dispute over General Casualty's liability. She states, "[b]ecause, as of July 30, 2003 [the date she accepted General Casualty's offer of judgment], there was (sic) no longer any disputed or unliquidated claims existing between General Casualty and Parsons, Parsons' cashing the General Casualty check tendered several weeks later could not effectuate an accord and satisfaction of any claims Parsons might have against the Klugs." We disagree. Parsons initiated the lawsuit specifically because a disputed claim existed. The check, on its face, noted that the amount tendered was in exchange for a full release of the Klugs as well as General Casualty. Even if we were to accept Parsons' contention that the accepted offer of judgment extinguished any dispute as to the value of her claim, we cannot accept the implication that the amount of damages that Parsons might have claimed over the $100,000 policy limit was resolved as well. The ultimate value of her claim was still subject to a good faith dispute.

636

¶ 11.  Parsons also asserts that her complaint and the resulting offer of judgment named only General Casualty as a defendant; therefore, the check payment resulting from the offer of judgment should be limited to claims against General Casualty regardless of the notation on the check. General Casualty responds that Parsons' claim was brought under Wisconsin's direct action statute, WIS. STAT. § 632.24, which predicates the liability of the insurer on that of the insured. In other words, the right of action against the insurer exists only to the extent it exists against the insured for his or her negligence. *See Biggart v. Barstad*, 182 Wis. 2d 421, 428, 513 N.W.2d 681 (Ct. App. 1994).

¶ 12.  With their interests thus aligned, the insured stands in privity with the insurer. As one Iowa court aptly stated, "there was but one wrong and but one cause of action," thus where liability cannot be imposed upon one, none can be imposed upon the other. *See Stucker v. Muscatine County*, 87 N.W.2d 452, 457 (Iowa 1958) ("As no liability can be imposed on the county defendants, none can be imposed upon their alleged indemnity carrier."); *accord Country Mut. Ins. Co. v. Regent Homes Corp.*, 380 N.E.2d 516, 519 (Ill. App. 1978) (A judgment is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them. This doctrine extends to all grounds of recovery which might have been presented.); *Cross v. Tokio Marine & Fire Ins. Co.*, 563 S.E.2d 437, 440 (Ga. App. 2002) (the doctrines of res judicata and collateral estoppel barred relitigation of issues that were litigated or could have been litigated between identical parties or their privies).

¶ 13.  We are persuaded that although the offer of judgment did not expressly refer to the Klugs, it in-

cluded them through their privy, General Casualty. Furthermore, fairness dictates that when Parsons cashed the check tendered in full payment of claims against the Klugs, she should be bound by the terms stated. General Casualty's intent was known; therefore, allowing Parsons to keep the money while disregarding the stated conditions would be unfair.

¶ 14. Parsons argues that to accept General Casualty's privity argument, we must conclude that *Prosser v. Leuck*, 225 Wis. 2d 126, 592 N.W.2d 178 (1999), was wrongly decided. The *Prosser* court considered the question of whether a plaintiff's offer of settlement sent to and naming only the insurer applied to the insured as well. *Id.* at 136. The court concluded that the insurer was duty-bound to clarify the offer. *Id.* at 139. We do not read *Prosser* to support Parsons' position. The *Prosser* court placed the burden of requesting clarification of a Wis. STAT. § 807.01 offer on the recipient of that offer. Here, it is not the offer that is at issue, but the check issued in satisfaction of the judgment. Parsons had the opportunity to request clarification upon receiving the check with the full release for the Klugs, but she did not do so. Furthermore, *Prosser* offers no guidance in the analysis of the accord and satisfaction issue presented by General Casualty. We do observe that Parsons had the opportunity to ask General Casualty for clarification of the check's notation or to return the check and pursue other remedies. She did neither.

¶ 15. Parsons' alternative argument is that the settlement she reached with General Casualty is unenforceable because it is contrary to Wis. STAT. § 807.10(1), which provides in part, "[a] compromise or settlement of an action or proceeding to which a minor . . . is a party may be made by . . . the guardian ad litem with

the approval of the court in which such action is proceeding or pending." General Casualty counters that Parsons' argument is misplaced because no settlement occurred, rather judgment was taken. We agree with General Casualty. Parsons expressly agreed that judgment would be entered against General Casualty in the amount of $100,000 with costs. The court then entered judgment against General Casualty for $100,458.64. On October 22, 2003, Parsons filed a satisfaction of judgment stating, "the clerk of said court is hereby authorized to satisfy and discharge said judgment of record."

¶ 16. Parsons' misplaced reliance on WIS. STAT. § 807.10 also suffers from the fact that she "ratified" the results of the claim after she reached the age of majority. *See, e.g., Estate of Bydalek v. Metropolitan Life Ins. Co.*, 220 Wis. 2d 739, 746–47, 584 N.W.2d 164 (Ct. App. 1998). In *Bydalek* we noted that ratification, in the broad sense, is "the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act." *Id.* at 746 (citing BLACK'S LAW DICTIONARY 1261 (6th ed. 1990)). When a person affirms a prior act that was not binding, but was done or professedly done on that person's account, that act is given effect as if originally authorized by that person. *See Bydalek*, 220 Wis. 2d at 746. Ratification may be express or may be inferred from known circumstances or a person's actions. *Id.* at 746–47. Here, General Casualty asserts, and Parsons does not deny, that Parsons "became an adult within three months [of the judgment] and, for more than three years thereafter, has kept the $100,000.00 and never taken any actions to repudiate it, to set it aside, or to otherwise have it declared invalid." It is reasonable to infer that Parsons ratified the release of all claims against the Klugs.

639

¶ 17.   General Casualty raises other arguments in favor of affirmance, primarily on equitable grounds. Because we have determined that Parsons' cashing of the check demonstrated an accord and satisfaction of her claims against General Casualty and the Klugs, and because the resolution came about by judgment rather than settlement, we affirm without reaching these additional arguments.

## CONCLUSION

¶ 18.   We hold that an accord and satisfaction, which released all of Parsons' claims against General Casualty and the Klugs, occurred when Parsons cashed the $100,000 check. Further, we conclude that because the claim was resolved when Parsons took judgment against General Casualty, the WIS. STAT. § 807.10 requirement that settlements involving minors be approved by the court was not implicated. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Order affirmed.